[No. 14063. *En Banc.* August 29, 1917.]

Hunter Tract Improvement Company *et al., Appellants,*
v. Corporation of the Catholic Bishop of
Nisqually *et al., Respondents.*[1]

Evidence—Conclusion of Witness—"Convent." Upon an issue as to the manner of use of a building, the statement that it was used as a "convent" is not objectionable as a conclusion of the witness, but is to be given weight according to the knowledge of the witness.

Covenants—Restrictive Use of Property—Residence Purposes—"Convent." A restrictive clause in a deed under which only a single detached residence could be built on the premises and could be used for "residence purposes only" is not shown to be violated by the use of a dwelling for residential purposes by twelve or fifteen women of a Catholic sisterhood, who wore a dark uniform, erected a small alter in the original living room, and had a priest conduct religious services every morning, and occasionally issued invitations to the "clothing of a novice" upon admitting a member; and it is not important that a witness testified that it was used as a "convent" and was so styled in the telephone directory and the invitations issued (Ellis, C. J., Main, and Webster, JJ., dissenting).

Appeal from a judgment of the superior court for King county, French, J., entered January 2, 1917, upon granting a nonsuit, dismissing an action for an injunction. Affirmed.

*Reynolds & Harroun,* for appellants.
*Farrell, Kane & Stratton,* for respondents.

Morris, J.—Action to enforce a restrictive clause in a deed reading that "Nothing but a single detached residence . . . shall be built on any one lot described in this deed,

[1]Reported in 167 Pac. 100.

and when so built shall be used for residence purposes only." For some time past, the property in suit has been occupied by a catholic sisterhood, referred to in the record as the "Ursulines." The question at issue is, is the property occupied for other than residence purposes only. Judgment of dismissal below and appeal. The first error assigned is in the striking of testimony in behalf of appellant that the premises in question were used as a convent, upon the ground that the answer stated a conclusion. While in a sense the question called for the conclusion of the witness, it was not in this sense improper. A witness may testify to the character of a building, as for instance, it is a church, a garage, or a school, when, as here, the issue to be determined is the manner of use of the building. The answer should be given such weight as the knowledge of the witness concerning the facts upon which he bases his answer entitles it to receive. We therefore accept the answer, and as this is a trial *de novo*, proceed to the second question raised, that the evidence sustained the complaint and the dismissal of the action was error.

The facts relied upon by appellant are these. The building upon the premises was built for use as a family residence and subsequently conveyed to respondents. Respondents have made no change in the outward appearance of the house, and there is nothing in its appearance to indicate it is other than a family residence. Living in the house are some twelve or fifteen women belonging to the catholic order known as the Ursulines. These women are clothed in a dark habit similar to that used by other catholic sisterhoods. They go out walking in groups of from two to twelve. In what was originally the living room of the house, a small altar has been erected. A priest comes every morning between six and seven o'clock and holds religious services. Chanting and singing have been heard and the ringing of small bells. On two or three occasions, a number of children have visited the home on Sunday afternoon. Shortly after their first occupancy, one of the neighboring residents was asked if objection would be

made to placing a small cross upon the house. Being informed that this would be objectionable, nothing further was done. In the city telephone directory, the telephone number is given under the name "Ursuline Convent." Young women have been admitted in the sisterhood at the home, at which time the following invitation and notice was sent out:

The Ursulines
of Seattle, Washington
request the honor of your presence at the
Clothing of their First Novice
In the Convent Chapel
2745 Mt. St. Helens Place
on Friday Afternoon, August Thirteenth
nineteen fifteen, at four o'clock
Right Reverend Edward J. O'Dea, D. D., Bishop of
Seattle, will officiate

The Ursuline Chapel is very small. The friends who kindly accept the invitation are requested graciously to overlook the consequent inconvenience.

In *Jones v. Williams*, 56 Wash. 588, 106 Pac. 166, it was held that restrictive words in a deed are to be construed strictly against the grantor and those claiming the restriction against the premises, and will not be extended beyond the clear meaning of the language used. The restriction here is "residence purposes only." These words are of simple and ordinary meaning, and if any construction is needed, it cannot be more than to say the house upon the premises shall be used for no other purpose than as a residence or dwelling. It does not seem to us that the above facts show that this residence is used for other purposes. It is immaterial what name is given to the women who live in this house or to the house itself, either by the telephone directory or by themselves. The restriction is not against names, but purposes. The house must be used for some other purpose than a residence. The fact that religious services are held in the house every morning by a priest or that a small altar has been erected does not take away from these premises their character as the home or residence of the women who live there.

We may take notice of the fact that religious services are held in many residences, that singing or chanting of a religious nature may be heard in family homes, and that, to those who are religiously inclined, the courts would hardly say, "If you have a clergyman of your religious faith visit your home every morning and hold services with you your home loses its character as a place of residence and becomes a religious institution." Neither can it be said that, because young children have been received on a Sunday afternoon, this shows the character of the home to be other than that of a residence. Neither does the garb or number of the inhabitants make these premises other than a residence.

The strongest argument in support of appellants' contention is in the invitation to the "clothing of their first novices." If these premises are habitually used for the training of young women who seek admission into the sisterhood, it might be said that the premises have lost their character as a residence "only" and taken on that of an institution. But such is not the record. We know nothing of the fact other than that, on the occasion referred to and as stated in the invitation, novices were clothed or taken into the order, a thing that of itself cannot be said to take away from these premises its residential feature. We cannot say that, under this restrictive clause, these sisters shall not upon occasion use their home for some function to which the public may be invited, as any home owner may use his home for like purpose, without it being said, because of such occasional use, it is no longer being used for "residence purposes only." It seems to us there is a wide difference between an occasional and an habitual and customary use. The first is a mere incidental use, the second may, under proper facts, be considered as the main use and purpose. We can add nothing to this restrictive clause. We must take it as we find it. And taking it in the light of the evidence, we find nothing that makes these premises other than a residence of the Ursulines. Calling the residence a convent adds nothing to the weakness of appellants' case. A

convent is a name ordinarily given to a religious community of nuns, some of whom conduct schools for young ladies, and others do not. If this so called convent was of the first order, it might be said to be a school or institution and not a residence. We can find nothing in this record other than the fact that a number of the sisterhood of the Ursulines make this their home or residence, and because they worship with the frequency or in the manner their conscience dictates and walk and dress in a peculiar manner and garb, or entertain small children, or clothe novices does not make these premises other than the residence of these women, in which, subject to the law of the land, they may deport themselves as they will.

It may be, and doubtless is, true that, in the common understanding of men, members of various catholic sisterhoods reside in convents, but it does not follow that every place where members of such sisterhoods reside is a convent. So, in the common understanding of men, a place where surgical and medical patients are received for treatment, where women go to be delivered of child, is called a hospital, but it does not follow that every such place is a hospital. It was accordingly held in *Carr v. Riley*, 198 Mass. 70, 84 N. E. 426, that a dwelling house fitted up and used for these purposes, which was the only home or place of residence of the owners, did not violate a restrictive clause in a deed providing that:

"No buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed or used upon the said land. No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land. No building erected on this land shall be used as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family. No building erected on said land shall be used for any manufacturing, mercantile, or mechanical purpose."

In *Hunt v. Held*, 90 Ohio St. 280, 107 N. E. 765, Ann. Cas. 1916C 1051, L. R. A. 1915D 543, it was held a clause in a deed restricting the use of the property "for residence pur-

poses only" was not violated by the erection of a double or two family house on the premises, upon the reasoning that "residence purposes" referred to the mode of occupancy, and so long as the building was used as a place of abode and no business carried on there, it would be used for residence purposes only.  So here, so long as these premises are occupied as a place of abode by this sisterhood, as distinguished from any business or institutional work, it is used for residence purposes only, whether used by one or a dozen sisters.   In *Hoffman v. Parker*, 239 Pa. 398, 86 Atl. 864, it was held that a prohibition against the use of any building other than for dwellings, apartments, churches, or private garages would not prevent the use of the basement of a dwelling for retail trade in food stuffs, no change being made in the outward appearance of the residence.   The latest apposite case we have found is *Scott Co. v. Roman Catholic Archbishop of Oregon,* 83 Ore. 97, 163 Pac. 88.   The relevant restriction there was against using or occupying any building upon the premises "otherwise than strictly for residence purposes (or for church or school purposes, and then only with the prior consent of the party of the first part)."   Consent by deed was given for the use for church and school purposes, so that part of the restrictive clause for our purposes may be disregarded.   It was sought to enjoin the defendant from erecting a building to be used as a convent.   Referring to this feature of the case, the court said:

"The only remaining question is whether a convent comes within the restriction.  A nun may be briefly designated as a woman of the Catholic religion who lives in a convent under vows of poverty, chastity and obedience.  A convent is a house or building occupied by nuns.  We are of the opinion that such a building may fairly be termed a residence or dwelling.  It is a dwelling place for nuns.  It would, therefore, seem, that if the other conditions of the restriction are complied with, it makes no difference how large the dwelling is or how many people occupy it."

This case cites *McMurtry v. Phillips Investment Co.*, 103 Ky. 308, 45 S. W. 96, 40 L. R. A. 489, where the restriction was that the property "shall be used for residence purposes only." It was urged that this restriction would be violated by the erection of an apartment house with a public or semi-public restaurant. The evidence upon this feature was to the effect that there would be no restaurant of a public nature, but that, in the basement of the building, a large dining room would be constructed to be used by the occupants of the apartments if desired. Held, that no violation of the restrictive clause was contemplated and that the building was to be used for residence purposes only. Upon the facts and the law, our conclusion is that the judgment should be affirmed. It is so ordered.

MOUNT, CHADWICK, FULLERTON, PARKER, and HOLCOMB, JJ., concur.

MAIN, J. (dissenting)—In this case, at the conclusion of the plaintiffs' evidence, the trial court granted a nonsuit. In my opinion, this evidence at least makes a *prima facie* showing of an institutional use, and that the building was not used for "residence purposes only." It was prejudicial error for the trial court to grant the nonsuit and not require the defendants to present their evidence. I therefore dissent.

ELLIS, C. J., and WEBSTER, J., concur with MAIN, J.