Carl W. WILLIAMS and Katharine W. Williams, his wife, John W. Green and Betty E. Green, his wife, Nathaniel W. Shockley and Irma P. Shockley, his wife, John G. Lakatos and Stella R. Lakatos, his wife, Vincent F. Maculaitis and Helen F. Maculaitis, his wife, Charles E. Grier, Jr. and Dorothy C. Grier, his wife, Charles E. Biebel and Sarah K. Biebel, his wife, James W. Emerson and Kathryn W. Emerson, his wife, E. Wade Kling and Patricia H. Kling, his wife, and James T. Quirk and Elizabeth K. Quirk, his wife, Plaintiffs,

v.

John A. TSIARKEZOS and Sondra J. Tsiarkezos, his wife, and Irene Shaw, Individually and/or trading as Pied Piper Day Care Center, Defendants.

Court of Chancery of Delaware, New Castle.

Dec. 31, 1970.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

Charles K. Keil, of Bayard, Brill & Handleman, Wilmington, for defendants.

MARVEL, Vice Chancellor:

Plaintiffs, who are owners of homes in Delpark Manor near Stanton, seek a permanent injunction against the continued operation of a child day care center car-

ried on for profit by defendants on a lot owned by them [1] located at 4704 Old Capitol Trail in such residential development, which is generally restricted to residential use by fifteen restrictive covenants which govern not only the use to be made of lots in the development but also the type of building to be constructed, as well as other building requirements, including the height of fences and set-backs.

The basic restrictive covenant here in issue purports to impose, with exceptions hereinafter noted but not applicable, any non-residential use of lots located in the development in question, and it is conceded by defendants that the child day care center now being operated by them in a Delpark residence (of which plaintiffs complain) is a project carried on for profit in contravention of a covenant to the contrary.

The principal restrictive covenant here in issue, namely number eight, provides that no " * * * trade, business, commerce, industry or occupation * * *" other than that carried on by a licensed dentist or doctor in an office in a portion of the dwelling in which he resides, shall be permitted in Delpark Manor. Defendants clearly do not fall within the stated exceptions in that they concededly operate for profit a child day care center at premises known as 4704 Old Capitol Trail. Another covenant here involved, namely number thirteen, authorizes any other person or persons owning land within the restricted area to prosecute any proceeding at law or in equity against the person or persons attempting to violate any of the restrictive covenants binding the residential area here involved, thus giving plaintiffs standing to sue, as they have here.

Defendants, in opposing plaintiffs' application for injunctive relief, first argue that the latter have allegedly tolerated other business or commercial activities in Delpark Manor not excepted by the terms of covenant in issue, and that plaintiffs accordingly come into Court with unclean hands. It is next contended that opposition to defendants' child day care center was not asserted until late 1968, two years after defendants commenced such project and had received leave to increase the size of their day care center. It is accordingly argued that plaintiffs are barred by laches or acquiescence from successfully objecting to the continuance of defendants' business or commercial activities.

It is finally argued that public policy favors the carrying on of the type of child day care center being operated by defendants and that a process akin to that of balancing the equities should result in a holding that the covenant relied on by plaintiffs, under the facts and circumstances of record, which support a finding that defendants' project is carried on efficiently and meets all the requirements of the State Division of Social Services, should not be enforced insofar as defendants' activities are concerned.

Evidence adduced at trial is to the effect that other residents of Delpark Manor have committed technical violations of the covenant here in issue as well as other restrictions imposed on lots in such development while their neighbors have for the most part stood idly by, although, as will be noted later herein, it is clear that such violations have been minimal and sporadic. In fact, the beauty parlour operation noted below was the only business carried on in the development in issue which clearly violated the restriction here in issue, and it ceased operations when certain residents objected about the time the lady and her husband moved from the area.

On the other hand, certain of the plaintiffs, since 1966, have no doubt had knowledge of the general nature of defendants'

1. Mrs. Shaw lives in the house in question. Her daughter, the defendant Sondra J. Tsiarkezos, and some five others, the exact number depending on the number of children enrolled at the center, are on the property only during the hours it is open for operation.

activities and some helped to distribute their hand bills, although at the beginning the operation was a small baby-sitting project for two or three young children. However, it is clear that since late 1968, a sizable group of day care center children, while at play outdoors, became not only clearly visible to such center's immediate neighbors, but, more to the point, were the source of a considerable amount of noise. In fact, it was the noise, or the threatened increase of such, caused by an additional number of children enrolled in defendants' nursery, coupled with the increase in traffic resulting from the delivery and pickup of such children in the morning and evening and the concomitant threat to land values in the development thereby induced, which ultimately led to the bringing of this suit early in February, 1969.

Thus, following a public hearing attended by a number of plaintiffs or their representatives, held in late 1968 for the purpose of considering defendants' application for leave from the County Board of Adjustment to enlarge nursery enrollment from twelve to twenty-five children, which approval was granted, plaintiffs promptly took action to secure protection of their claimed rights by filing their complaint in this Court.

Defendants, in opposing plaintiffs' application, stress what they characterize as the passive conduct of plaintiffs and other residents of Delpark Manor in failing to object promptly when the day care center's operations were first undertaken, and there is no doubt but that failure to object promptly to an invasion of one's rights is indicative of that type of acquiescence which usually estops a plaintiff from thereafter successfully complaining that his rights have been intruded upon. See Romer v. Porcelain Products, 23 Del.Ch. 52, 2 A.2d 75, and Frank v. Wilson & Co., 24 Del.Ch. 237, 9 A.2d 82.

In approaching the merits of this case, it must be noted, first of all, that the commercial activities complained of by plaintiffs are concerned with the relatively peaceful operation of a day nursery as opposed to that of an industrial type of activity which would more clearly tend to destroy the residential nature of the community here involved. And there is no doubt but that the day care center here in issue, while a claimed annoyance to nearby residents of Delmanor Park, is in fact of general benefit to the residents of that part of the county in which defendants' nursery is located, there being evidence of record that this type of service is a virtual necessity for working mothers and that when, (as is true in the case at bar) such centers are operated efficiently, they promote the public welfare.

■ ■ However, defendants overlook the fact, that restrictive covenants in a residential area are designed to bind each and every lot therein and are not to be ignored by a court unless through desuetude they no longer serve the purpose for which they were designed, Welshire, Inc. v. Harbison, 33 Del.Ch. 199, 91 A.2d 404, and 1.77 Acres of Land v. State (Del.Supr.), 241 A.2d 513. And having considered not only the exhibits, testimony, but also viewed Delpark Manor, I am satisfied that there has been no such radical change in residential use of such development as to justify a court in declining to enforce the covenant relied upon by plaintiffs, and that the commercial projects carried on outside of the restricted tract do not have the effect of altering Delpark Manor's residential character.

■ Next, reverting to the matter of acquiescence, I see no direct relation between violations of fence height restrictions and a non-residential use, and it would appear that the height of most metal fences in the area merely conform to the standard chain-link type generally used and was not only condoned but approved by the local civic association. Higher lattice type fences appear to have been built to preserve privacy.

But, as earlier noted, defendants insist that the tolerating of other businesses in

Delpark Manor by plaintiffs is of the nature of unclean hands and prevents them from successfully complaining about defendants' enterprise by reason of acquiescence. However, I am satisfied that the so-called G & G Recreational Sales Company was non-existent in that no sales were made, the name being a device for the acquisition of a trailer at a reduced price, the so-called engineering consulting service of the plaintiff Emerson was analogous to that found unobjectionable and minimal in Shields v. Welshire Development Co., 37 Del.Ch. 439, 144 A.2d 759, that an alleged automobile rebuilding project complained of was of the nature of a hobby, and finally that the operator of a beauty parlour discontinued her business before it was necessary for plaintiffs to take action.

■ Next, even were some of the plaintiffs, such as the Williams, who live next to defendants' center, to be deemed guilty of laches, other plaintiffs, living in areas of Delpark Manor remote from defendants' center, were understandably oblivious of its activities until the project began to grow and become apparent. Compare Shields v. Welshire Development Co., supra. In any event, apart from the plant-

ing of some trees and the completion of a garage defendants have not made obvious outside changes to their residence or otherwise clearly changed their position to their detriment relying on apparent acquiescence on plaintiffs' part.

■ My next conclusion is that plaintiffs, having unsuccessfully opposed the enlargement of defendants' center late in 1968, acted with sufficient speed in seeking redress by bringing this action on February 4, 1969.

■ Finally, while it is regretable that a well-run child day care center, which has been approved by the County, must be shut down, I can see no alternative to granting plaintiffs the relief prayed for by them. To deny such relief would constitute a disregard of their clear rights in view of the precise language used in the covenant here in issue. Compare Edgemoor Terrace Civic Association v. Spinning Wheel Inn, Inc. (Del.Ch.) 256 A.2d 284.

On notice, a form of permanent injunction may be submitted in conformity with the above opinion directing the closing down of defendants' child day care center.