RICHARD W. WALTON AND WIFE, MARYANN WALTON, PLAINTIFFS-APPELLEES v. NEIL S. CARIGNAN AND WIFE, SHARON B. CARIGNAN, DEFENDANTS-APPELLANTS

No. 901SC992

(Filed 2 July 1991)

**Deeds §§ 85, 86 (NCI4th) — restrictive covenant — residential subdivision — day care home — no waiver**

The trial court correctly granted summary judgment for plaintiffs in an action to enforce a restrictive covenant where plaintiffs and defendants purchased their lots subject to restrictive covenants prohibiting commercial or business use of any lot within the subdivision and Mrs. Carignan admitted operating a small licensed day care home in her residence. The covenants are plain and clear, and defendant's activities, although well motivated and much needed, are business activities. Other

business or professional activities in the subdivision to which plaintiffs have acquiesced do not amount to a waiver of the right to enforce the restrictions because changed conditions within the covenanted area are not so radical as practically to destroy the essential objects and purpose of the scheme of development.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 192, 197, 273.**

**Children's day-care use as violation of restrictive covenant. 29 ALR4th 730.**

APPEAL by defendants from order dated 6 July 1990 in DARE County Superior Court by *Judge Paul M. Wright* granting plaintiffs' motion for summary judgment. Heard in the Court of Appeals 10 April 1991.

In January of 1987 defendants Neil and Sharon Carignan purchased a home and lot in "Burnside Forest, Section Two, Roanoke Island" subdivision in Dare County. Subsequently, Sharon Carignan decided to operate a small-scale day-care operation out of the couple's residence. Mrs. Carignan took the necessary steps to become licensed as a child day-care home.

On 21 May 1987 Mrs. Carignan received notification that she was licensed by the Division of Facility Services of the North Carolina Department of Human Resources as a registered day-care home. Since that time, Mrs. Carignan has operated a day-care home in the defendants' residence, caring for a maximum of nine children. In March, 1990, she was caring for six children. Mrs. Carignan has no employees and operates her day-care home on her own. Defendants' residence has not been enlarged or renovated in any way to accommodate the day-care operation.

Plaintiffs Richard W. and Maryann Walton are also owners of a home and lot in the "Burnside Forest, Section Two, Roanoke Island" subdivision. Plaintiffs and defendants purchased their respective lots subject to restrictive covenants prohibiting commercial or business use of any lot within the subdivision. The restrictive covenants applicable to the parties' property state in part:

THE COVENANTS, RESTRICTIONS, AND DECLARATIONS ARE AS FOLLOWS:

1. All lots and lands shall be used exclusively for residential purposes. No lots or lands included in this Declaration shall be used or occupied for the manufacture or sale of any articles or for any commercial purposes of any kind or character whatsoever, or for the conducting of any business. Hotels, motels, rooming houses or boarding houses are specifically forbidden.

. . .

17. There shall be no signs, billboards or advertising structures of any nature whatsoever placed on any lots or lands; nor shall there be any business, trade or profession conducted or practiced on the lots or lands.

Plaintiffs filed this action seeking injunctive relief, alleging that use of defendants' home as a family day-care home violated the restrictive covenants applicable to the residential property of both parties. In her answer and affidavit, defendant Sharon Carignan acknowledges the existence of the restrictive covenants and admits to operating a child day-care home in her residence. Both parties filed motions for summary judgment and on 6 July 1990 the trial court granted plaintiffs' motion and denied defendants' motion for summary judgment and enjoined defendants from operating the child day-care home. Defendants appeal.

*No brief for plaintiffs-appellees.*

*Shearin & Archbell, by Roy A. Archbell, Jr., for defendants-appellants.*

WELLS, Judge.

Because principles of summary judgment law are often stated and well understood, we need not repeat them here. The essential and dispositive question is whether the materials before the trial court presented a factual dispute appropriate for resolution by trial, or whether under the undisputed facts of this case, plaintiffs were entitled to judgment as a matter of law.

Covenants which restrict an owner's use of real property have often presented our courts with questions difficult to resolve, but few cases we have found in the law of this State have presented a question more troubling than the one at issue here.

Affordable and adequate day care for small children is a problem of immense proportions in North Carolina. Studies presented

to the trial court in this case and included in the record on appeal indicate that North Carolina has the highest proportion of working mothers of any state in the United States. Women in general, and working mothers in particular, make up a vital segment of talent needed for our various business, commercial, agribusiness enterprises, and professional and institutional services. Yet day-care facilities are in relatively short supply, especially in rural areas and smaller cities and towns. Cost and convenience, as well as dependability and safety of day care for small children, are matters of immediate and serious concern for working mothers and single fathers.

Thus, were we at liberty to do so, we might place our trial and appellate courts in a position to balance these great social needs against the interest of property owners in exercising their property rights. Other courts have done so. In their very appealing argument, defendants have directed our attention, *e.g.*, to a decision of the Michigan Court of Appeals in which that court engaged in a public policy-balancing analysis and determined that similar restrictive covenants would allow small-scale, unobtrusive day-care activities in a house in a residential neighborhood. *See Beverly Island Assoc. v. Zinger*, 113 Mich. App. 322, 317 N.W. 2d 611 (1982). Defendants have also directed our attention to a helpful annotation entitled, "Children's Day-Care Use As Violation of Restrictive Covenant," 29 A.L.R. 4th 730. This annotation reveals that this vexing question is one of national concern, and that different results have been reached in similar cases around the United States.

The courts which have generally followed the Michigan Court of Appeals' approach have tended to focus on the scope of activity as being material, if not dispositive. This approach allows the courts to determine whether the involved activity affects the use of the property so as to change its use from its essential residential characteristics. Under the case-law precedents of this State, we do not perceive that we are at liberty to use this approach to resolve this case.

Our courts have often stated that while restrictive covenants are not favored by law and therefore must be strictly construed; nevertheless, clearly and narrowly drawn restrictive covenants may be employed in such a way that the legitimate objective of a development scheme may be achieved. *See Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E.2d 174 (1981). The principles have been stated

WALTON v. CARIGNAN

[103 N.C. App. 364 (1991)]

in a different way to say that the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction. *See Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967); *Black Horse Run Ppty. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 362 S.E.2d 619 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988); *Barber v. Dixon*, 62 N.C. App. 455, 302 S.E.2d 915, *cert. denied*, 309 N.C. 191, 305 S.E.2d 732 (1983). *See also* Webster, *Real Estate Law in North Carolina* § 388 (Hetrick res. 1988).

The dispositive facts in this case are not in dispute. The covenants are plain and clear — no commercial activity, no business operation. Defendant Sharon Carignan operates a business. Her profits are small and her activities are caring for small children. Although well motivated and much needed, these are business activities. As difficult as the resolution of this case may be, we have no choice but to rule that the trial court's entry of summary judgment for plaintiffs was correct.

One question remains. Defendants have briefly asserted a question of waiver, pointing out that the materials before the trial court show that numerous other business or professional activities take place, or have taken place, in the Burnside subdivision, including other day-care operations. Defendants contend that plaintiffs have acquiesced to these apparent violations. Our courts have held that acquiescence in violations of restrictive covenants does not amount to a waiver of the right to enforce the restrictions unless changed conditions within the covenanted areas are so radical as practically to destroy the essential objects and purpose of the scheme of development. *See Barber v. Dixon, supra,* and cases cited and relied upon therein. We find no such conditions of waiver in this record.

For the reasons stated, the judgment of the trial court must be and is

Affirmed.

Chief Judge HEDRICK and Judge EAGLES concur.