[No. 30868-8-I.    Division One.    April 19, 1993.]

JOHN METZNER, ET AL, *Respondents,* v. CHRISTOPHER J. WOJDYLA, ET AL, *Appellants.*

*Victoria Van Hof,* for appellants.

*William P. Roehl* and *Roehl & Roehl, P.S.,* for respondents.

COLEMAN, J. — Christopher and Jadranka Wojdyla appeal the trial court's order of summary judgment, arguing that a genuine issue of material fact existed regarding whether their operation of a home day-care facility violated a covenant restricting use of their property to residential purposes only. We reverse.

In 1990, the Wojdyla family moved into a home in Tweed Twenty, a residential subdivision located in Whatcom County. Their backyard abutted the backyard of John and June Metzner, an elderly, retired couple. When the Wojdylas purchased their home, they were informed that a number of covenants restricted the use of their property, including one which provided: "Said property shall be used for residential purposes only. No building shall be erected, placed, altered, or permitted to remain on any lot other than one detached single-family dwelling with a private garage[.]"

In order to supplement the family's income, Jadranka Wojdyla applied for and was issued a home day-care license, which allowed her to care for a maximum of eight children, in addition to her own two children. The actual number of children that she cared for was usually six or fewer, including her own. The Metzners sued to enjoin the day care because noise from the Wojdylas' yard bothered them when they were sitting on their rear deck or in their yard. On May 8, 1992, the trial court granted the Metzners' motion for summary judgment. The Wojdylas appeal.

The sole issue on appeal is whether the trial court erred in finding as a matter of law that the Wojdylas' operation of a home day care was in violation of covenants restricting the use of their property.[1]

The primary objective in construing a covenant is to ascertain the intention of the parties to the agreement. *Hagemann v. Worth*, 56 Wn. App. 85, 88, 782 P.2d 1072 (1989) (cit-

---

[1] The Wojdylas also argue that the doctrine of estoppel prevents enforcement of the covenant against them. However, this argument was not raised before the trial court and cannot be raised for the first time on appeal.

ing *Burton v. Douglas Cy.*, 65 Wn.2d 619, 621-22, 399 P.2d 68 (1965); *Sandy Point Imp. Co. v. Huber*, 26 Wn. App. 317, 320, 613 P.2d 160 (1980)). Restrictive covenants are strictly construed in favor of the free use of property and will not be extended to encompass any use not clearly expressed. *White v. Wilhelm*, 34 Wn. App. 763, 767, 665 P.2d 407 (quoting *Burton*, at 621-22), *review denied*, 100 Wn.2d 1025 (1983). However, a covenant should not be read in such a way that defeats the plain and obvious meaning of the restriction. *Mains Farm Homeowners Ass'n v. Worthington*, 64 Wn. App. 171, 175, 824 P.2d 495 (quoting *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 180, 810 P.2d 27, *review denied*, 117 Wn.2d 1013 (1991)), *review granted*, 119 Wn.2d 1001 (1992).

Although no Washington court has addressed the present issue, two cases address whether covenants limiting property to residential use preclude home care facilities for the elderly. In *Hagemann v. Worth, supra*, covenants on the defendants' property stated that the area was for "residential and recreational use". Buildings were restricted to " 'single-family residences' " and " 'business, industry or commercial enterprise of any kind or nature . . .' " was prohibited. *Hagemann*, at 87. The defendants remodeled their home to use it as a residence for the elderly. They were licensed for adult family home care and were authorized to house up to nine residents. *Hagemann*, at 87 n.2. Their neighbors sued to enjoin the activities, and the trial court found that the defendants' use of their home constituted a business, in violation of the covenant. *Hagemann*, at 86.

The Court of Appeals upheld the injunction, stating that the care facility threatened the residential character of the neighborhood and that the neighbors were not required to show that the facility caused them substantial injury. *Hagemann*, at 89. The court concluded that the care facility was a business because of several factors: the facility constituted the defendants' primary source of income, the defendants had several employees, and they used their home as a business deduction on their tax return. *Hagemann*, at 90-91.

In *Mains Farm*, covenants on the defendants' property stated that the property *"shall be used for single family residential purposes only." Mains Farm*, at 173. Like the defendant in *Hagemann*, the defendant in *Mains Farm* had established an elderly care facility, although on a smaller scale. *Mains Farm*, at 174. The trial court enjoined the activity, and the Court of Appeals affirmed, adopting the reasoning in *Hagemann*. The court stated that the defendant's use of her property was "akin to the use in *Hagemann*". *Mains Farm*, at 177.

> Worthington's use of her home for a commercial purpose was not incidental to the residential purpose. Rather, the residential purpose was incidental to the business purpose. The uncontroverted facts are that Worthington provides 24-hour care to four elderly residents for fees of $500 to $1,000 per person per month. In addition, she occasionally hires outside help to assist her in this enterprise. Although a purpose of this enterprise was to provide a residence for elderly persons, a substantial entrepreneurial purpose was at the core of her efforts.

*Mains Farm*, at 177. Thus, the court agreed that the defendants' activities violated the restrictive covenants.

Arguing that a home day-care facility differs significantly from the facilities in *Hagemann* and *Mains Farm*, the Wojdylas urge this court to distinguish those cases and adopt the reasoning of the Michigan appellate court in *Beverly Island Ass'n v. Zinger*, 113 Mich. App. 322, 317 N.W.2d 611, 29 A.L.R.4th 723 (1982). In *Beverly Island*, the covenant, which was essentially the same as the covenant in the present case, provided that "No lot or building plot shall be *used except for residential purposes." Beverly Island*, at 324. The defendants operated a small day care in their home, and the local homeowners' association sued to enjoin their activities. *Beverly Island*, at 324. The trial court granted summary judgment to the plaintiffs, and the Court of Appeals reversed. *Beverly Island*, at 331-32.

The court first examined the legal meaning of the term "residential use", and determined that "a business or professional use may not violate a residential use covenant so long as the nonresidential use was casual, infrequent or unobtru-

sive and was not detrimental to the property values of neighbors." *Beverly Island*, at 326. The court then examined the scope of the defendants' activities and concluded that, because the defendants cared for no more than seven children at any one time, the activities were not intrusive. The court stated:

> The only observable factor which would indicate to an observer that defendants do not simply have a large family is the vehicular traffic in the morning and afternoon when the children arrive and depart. When focusing on the objective activities involved in this case, we find they are residential in nature.

*Beverly Island*, at 328. The court then weighed the intrusiveness of the activities against the policy considerations in favor of family day-care homes, and concluded that the defendants were using their property for residential purposes. *Beverly Island*, at 331.

██ We find the *Beverly Island* approach persuasive. As one court described the approach, it "allows the courts to determine whether the involved activity affects the use of the property so as to change its use from its essential residential characteristics." *Walton v. Carignan*, 103 N.C. App. 364, 367, 407 S.E.2d 241, 243, *review denied*, 330 N.C. 123 (1991). Clearly, not *every* activity of a business nature would be prohibited by the covenants on the Wojdylas' property; at some point, enforcement of the covenants becomes unreasonable. The appropriate issue, therefore, is where to draw the line, and we believe that *Beverly Island* offers reasonable guidelines for evaluating each case on its facts.

Nor is *Beverly Island* inconsistent with Washington case law. The elderly care facility cases are distinguishable from *Beverly Island* and the present case on several important grounds. First, the covenants in *Hagemann* were more restrictive than the covenants in the present case: In *Hagemann*, in addition to stating that the property was to be used for residential purposes only, the covenants explicitly prohibited " 'business, industry or commercial enterprise *of any kind or nature*[.]' " (Italics ours.) *Hagemann*, at 87. As the *Beverly Island* court pointed out, "[a] restriction allowing

residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses." *Beverly Island,* at 613. The covenant in the present case, because it provides simply that the "property shall be used for residential purposes only", permits a wider variety of uses than the covenant in *Hagemann.*

Second, although the covenant in *Mains Farm* was essentially the same as the covenant in the present case, the holding in that case rested on the court's finding that the defendants' commercial use of their property was not incidental to their use of the property for residential purposes, but that, on the contrary, the residential purposes were incidental to the commercial purpose. *Mains Farm,* at 177. In *Mains Farm,* as well as in *Hagemann,* the income from the elderly care facilities was a primary source of revenue, and both defendants had remodeled their homes to accommodate the facilities. *See Mains Farm,* at 174, 177; *Hagemann,* at 87, 90. In the present case, on the other hand, the income derived from the Wojdylas' day care is not their primary source of income, and the Wojdylas' use of their property as a day-care facility is clearly incidental to their use of the property for residential purposes.

Not only are the Wojdylas' activities incidental to the residential uses of their home, the day-care activities are on a much smaller, less intrusive scale. Although licensed to care for up to 10 children, Ms. Wojdyla's affidavit, which is undisputed, states that she seldom cares for more than 6 children, including her own. Several of the Wojdylas' neighbors, including next-door neighbors on both sides and one that lives across the street, submitted affidavits to the trial court stating that they had never been bothered by the day care and, in fact, were not even aware that it existed.[2] In addition, both elderly care facilities provided 24-hour care to residents, whereas here the day care operates only during the day.

---

[2]The Metzners, on the other hand, presented only their own affidavit in support of their motion for summary judgment. They did not attempt to rebut the neighbors' affidavits submitted by the Wojdylas.

Additionally, we believe that small-scale child care is an activity that is customarily incident to the residential use of property, whether it involves caring for one's own children or someone else's children. Although periodic "baby-sitting" for compensation would technically be a business use of one's property, it is clear that the covenants on the Wojdylas' property could not reasonably be construed to prohibit that activity. We recognize that the activities involved in operating a home day care are on a larger scale and a more regular basis than the occasional baby-sitting of a neighbor's children; however, they nonetheless correspond closely with normal single-family residential activities. In this regard, the Wojdylas correctly point out that the noise to which the Metzners object would be the same if the Wojdylas' two children were simply playing in the yard with a few of their friends or if the Wojdylas had a large family.

In sum, we hold that the Wojdylas' home day care is not prohibited by the covenant restricting use of their property to residential purposes.[3] We base our holding on several factors, including (1) the Wojdylas' use of their home as a day care is incidental to their use of their home as a single-family residence, (2) the Wojdylas' day care is small and not significantly more intrusive than normal single-family activity, and (3) child care is an activity that is customarily and historically incident to the residential use of property.[4]

---

[3]Our holding is intended to apply solely to restrictive covenants on single-family dwellings. We realize that additional considerations could require a different result in situations involving multiple-family dwellings. *See, e.g., Woodvale Condominium Trust v. Scheff,* 27 Mass. App. Ct. 530, 540 N.E.2d 206 (expressing concern about potential liability of condominium association), *review denied,* 405 Mass. 1205 (1989). In addition, our decision today should not be interpreted as applying to or affecting zoning ordinances in any way.

[4]Although not a determining factor in our decision, we note that several jurisdictions have articulated a strong public policy in favor of home day-care centers. *See, e.g., People v. Bacon,* 133 Misc. 2d 771, 776, 508 N.Y.S.2d 138, 141 (1986) (construing zoning ordinance as allowing home day care because of legislative finding of "growing need to expand the availability and accessibility of safe, affordable and quality day-care services for children"); *Walton v. Carignan,* 103 N.C. App. 364, 366, 407 S.E.2d 241 (stating that "[a]ffordable and adequate

The order of summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.

Reconsideration denied May 14, 1993.

Review granted at 122 Wn.2d 1015 (1993).

day care for small children is a problem of immense proportions in North Carolina"), *review denied*, 330 S.C. 123 (1991).