[No. 60605-6. En Banc. December 15, 1994.]

JOHN METZNER, ET AL, *Petitioners*, v. CHRISTOPHER J. WOJDYLA, ET AL, *Respondents*.

*Philip A. Talmadge* and *Robert G. Nylander* (of *Talmadge and Cutler*) and *William P. Roehl* (of *Roehl & Roehl, P.S.*), for petitioners.

*Victoria Van Hof; Maltman, Reed, North, Ahrens & Malnati, P.S.*, by *Douglass A. North*, for respondents.

SMITH, J. — Petitioners John and June Metzner seek review of a decision of the Court of Appeals, Division One, reversing a judgment of the Whatcom County Superior Court enjoining Respondents Christopher J. and Jadranka Z. Wojdyla from operating a licensed child day care facility in their home in the Tweed Twenty subdivision, which is subject to a restrictive covenant limiting use of the property to "residential purposes only". We reverse the Court of Appeals.

### STATEMENT OF FACTS

Petitioners John and June Metzner, ages 79 and 74,[1] have lived in Whatcom County for more than thirty years. In January 1989 they purchased a home at 3863 Del Bonita Way in Bellingham, Whatcom County, in a residential subdivision, the Tweed Twenty, north of Lake Whatcom on Britton Road.[2] In October 1990 Respondents Christopher J. and Jadranka Z.

---

[1]Clerk's Papers, at 36.

[2]Clerk's Papers, at 35.

Wojdyla purchased a home at 1381 Welling Road, also in the Tweed Twenty subdivision.[3] The Metzners' property and the Wojdylas' property are separated by a corner lot at the intersection of Del Bonita Way and Welling Road. Their property abuts in a short corner of their backyards.[4]

The Tweed Twenty subdivision is subject to many restrictive covenants, but the one pertinent to this case provides:

> 1. *Said property shall be used for residential purposes only.* No building shall be erected, placed, altered, or permitted to remain on any lot other than one detached single-family dwelling with a private garage for not more than three cars without the consent of the grantor.[5]

Petitioners Metzner assert that the "residential purposes" covenant was a significant factor in their decision to purchase their home in the subdivision.[6] Respondents Wojdyla were also aware of the covenant when they purchased their property.[7]

On December 1, 1990, Respondent Jadranka Z. Wojdyla obtained a family day care home license from the Department of Social and Health Services.[8] This license permitted her to provide home day care for no more than 10 children, including her own, and also permitted her to hire a helper.[9] She usually provided day care for six children, which included two of her own.[10]

---

[3]Clerk's Papers, at 14.

[4]Clerk's Papers, at 44.

[5](Italics ours.) Clerk's Papers, at 51. The topic sentence is not related to the language which follows. We address our attention only to the language of that sentence. Neither of the parties argued otherwise.

[6]Clerk's Papers, at 35.

[7]Clerk's Papers, at 14, 35, 51.

[8]Clerk's Papers, at 45.

[9]In an affidavit of Respondent Jadranka Z. Wojdyla, filed May 4, 1992, she states that the woman who approved her day care license at the Department of Social and Health Services had also operated a home day care in the Tweed Twenty subdivision for more than eight years. Ms. Wojdyla further stated she was aware of at least five other licensed day care homes in the subdivision, as well as "quite a few" unlicensed ones. Clerk's Papers, at 15.

[10]Clerk's Papers, at 15.

After the Wojdylas started providing day care services, the Metzners began to complain about excessive noise from the children.[11] On December 3, 1991, the Metzners filed an action in the Whatcom County Superior Court to enjoin the Wojdylas from using their property as a day care facility. On May 8, 1992, the Honorable Michael F. Moynihan granted the Metzners' motion for summary judgment and issued a permanent injunction enjoining the Wojdylas from operating a child day care center in their residence.[12]

On April 19, 1993, the Court of Appeals reversed the trial court, holding that the Wojdylas' use of their property as a child day care facility did not violate the restrictive covenant.[13] No reference was made to an amended covenant.

The Metzners seek review in this court and the Wojdylas request an award of attorney fees for answering the petition.

### QUESTIONS PRESENTED

The first question presented by this case is whether the Court of Appeals, Division One, erred in reversing the deci-

---

[11]Clerk's Papers, at 36.

[12]Clerk's Papers, at 11. In a June 5, 1992 affidavit supporting a motion to lift the injunction, Respondent's attorney stated they "obtained signatures of a majority of lot owners in Division 6 of Tweed Twenty subdivision voting to amend the restrictions and covenants . . . to allow the operation of a Department of Social and Health Services licensed home day care." Clerk's Papers, at 6. The purported amendment would read:

1. Said property *shall be used for residential purposes only except that operation of a Department of Social and Health Services licensed home day care shall be permitted.* No building shall be erected, placed, altered, or permitted to remain on any lot other than one detached single-family dwelling with a private garage for not more than three cars without the consent of the grantor.

(Italics ours.) The affidavit stated an "intention . . . to record the Amendment to the Restrictions and Covenants in the Whatcom County Auditor's Office, and . . . provide the court with the Auditor's filing number." It is unclear from the record whether the purported amendment has been recorded, and there is no file number from the Whatcom County Auditor's Office. The affidavit of Respondents' attorney could not have been considered by the Whatcom County Superior Court in the original proceeding because it was filed almost one month after that court signed the order granting the injunction on May 8, 1992. If the amendment in fact has been approved, it would at least tend to render the controversy in this case moot. However, that affidavit is not properly before this court. Clerk's Papers, at 7.

[13]*Metzner v. Wojdyla*, 69 Wn. App. 405, 848 P.2d 1313 (1993).

sion of the trial court which concluded that operation of a licensed child day care facility in a residential neighborhood violated a restrictive covenant limiting use of property to "residential purposes only". The second question is whether Respondents, who prevailed in the Court of Appeals, are entitled to attorney fees for answering the petition before this court.

## DISCUSSION

Petitioners Metzner maintain that Respondents Wojdylas' operation of a licensed child day care facility in the Tweed Twenty subdivision neighborhood violates restrictive covenants applicable to their property.[14]

Some states have held that operation of a residential child day care facility violates covenants restricting use of premises to residential purposes only.[15] However, other states have held that use of a private residence for a child day care facility does not violate covenants restricting use of property to residential purposes only.[16] Examination of case law

---

[14]Br. of Resp'ts.

[15]*Walton v. Carignan,* 103 N.C. App. 364, 407 S.E.2d 241 (1991) (operation of small residential child day care facility violates restrictive covenant specifically prohibiting commercial or business uses); *Cook v. Hoover,* 428 So. 2d 836 (La. Ct. App. 1983) (operation of residential child day care facility with an enrollment of 87 children was obtrusive and violated "residence purposes only" covenant); *Williams v. Tsiarkezos,* 272 A.2d 722 (Del. Ch. 1970) (residential child day care facility for 12 to 25 children violated restrictive covenant specifically prohibiting "trade, business, commerce, industry or occupation" in a residence); *Berry v. Hemlepp,* 460 S.W.2d 352 (Ky. 1970) (operation of residential child care facility for 15 to 25 children violated restrictive covenant); *Voyles v. Knight,* 220 Ga. 305, 138 S.E.2d 565 (1964) (operation of residential child care facility in vacant house adjacent to defendant's residence violated restrictive covenant intended for residential purposes only).

[16]*Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976) (group home for multi-handicapped preschool children did not violate restrictive covenant limiting residential use to single family residences); *Beverly Island Ass'n v. Zinger,* 113 Mich. App. 322, 317 N.W.2d 611 29 A.L.R. 4th 72 (1982) (operation of residential child day care facility did not change the character of the neighborhood to violate covenant limiting use of premises to residential purposes); *J.T. Hobby & Son, Inc. v. Family Homes of Wake Cy., Inc.,* 302 N.C. 64, 274 S.E.2d 174 (1981) (group home for developmentally disabled persons consistent with use limitation in a subdivision for "residential purposes"); *Shoaf v. Bland,* 208 Ga. 709, 69 S.E.2d 258 (1952) (kindergarten not inconsistent with lots used solely as "resi-

throughout the United States is not helpful. Although the reasoning of other courts may be persuasive, this court will look only to its own decisions to resolve questions relating to licensed residential child day care facilities and "residential purposes only" covenants.

Under the Washington Administrative Code (WAC), which governs licensing of care facilities by the Department of Social and Health Services, the Respondents Wojdylas' facility is defined under former WAC 388-73-014(4)(c), which reads:

> A family day care home means a day care facility for the care of ten or fewer children in the family abode of the person or persons under whose care and supervision the children are placed.[17]

### Interpretation of Restrictive Covenants

■■■■ Restrictive covenants are designed to make residential subdivisions more attractive for residential purposes, and are enforceable by injunctive relief without showing substantial damage from the violation.[18] " '[T]he primary objective in interpreting restrictive covenants . . . is to determine the intent of the parties . . .'. (Footnote omitted.) *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 179, 810 P.2d 27, *review denied*, 117 Wn.2d 1013 (1991). In determining intent, language in the covenant is to be given its 'ordinary and common use'. *Krein v. Smith*, 60 Wn. App. 809, 811, 807 P.2d 906, *review denied*, 117 Wn.2d 1002 (1991)."[19]

---

dential lots"); *Gregory v. State Dep't of Mental Health, Retardation & Hosps.*, 495 A.I. 997 (R.I. 1985) (group home for six developmentally disabled persons within the scope of "single-family dwelling" and "residential purposes only"); *Davis v. Hinton*, 374 S.W.2d 723 (Tex. Civ. App. 1964) (use of premises as residential child day care was incidental to the use of the residence as a single-family dwelling and not in violation of the covenant restricting use for residential purposes only); *see also First State Bank v. James*, 471 S.W.2d 868 (Tex. Civ. App. 1971).

[17]*See* RCW 74.08.044 and RCW 74.15. Under the licensing scheme, Respondents' day care facility is characterized as an agency. RCW 74.15.020(3).

[18]*Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 815, 854 P.2d 1072 (1993).

[19]*Mains Farm*, at 815.

The restriction in the covenant in this case relates only to whether the premises are used for residential purposes only. The Metzners argue that our case law has established a bright-line rule which prohibits any commerical or business use of property which is subject to a residential use restriction. We agree.

■■ The phrase "residential purposes" was interpreted by the Court of Appeals in *Hagemann v. Worth*.[20] In holding a group home violated the restrictive convenant, the court noted that the term "residential" was the antonym of "business" and that accepting paying customers was not synonymous with a residential purpose.[21] This interpretation of "residential" was confirmed in *Mains Farm Homeowners Ass'n v. Worthington, supra.* There the covenant limited use to "single family residential purposes only." As in the *Hagemann* case, operation of an adult group home was at issue. The court focused on the business nature of the enterprise and held it violated the restrictive covenant:

> [D]efendant's use includes a commercial element because she receives payment for the care that she gives unrelated adults in her home. . . . The single-family residential nature of defendant's use of her home is destroyed by the elements of commercialism and around-the-clock care that must be accorded to the unrelated persons who occupy her home.[22]

The court reached this conclusion although the defendant in that case also made the residence a home for herself and her children.

It is beyond question that the Wojdylas are indeed operating a business. Like the state-licensed adult facilities in *Hagemann* and *Mains Farm*, the child day care center operated by the Wojdylas accepts money in exchange for the care of persons (in this instance, children) not related to them. It is also licensed by the State and considered an "agency" under state law.[23] Although the restrictive covenant lan-

---

[20]56 Wn. App. 85, 91, 782 P.2d 1072 (1989).

[21]*Hagemann*, at 91.

[22]*Mains Farm*, at 821 (quoting the trial court).

[23]*See* RCW 74.15.020(3).

guage here is not identical to that in *Hagemann* or *Mains Farm*, the differences are not significant.

The Wojdylas argue that *Mains Farm* requires a further inquiry into whether operation of their day care center was the primary use or an incidental use of their property. We do not agree. Defendants in *Mains Farm* made a similar argument, citing *Hunter Tract Imp. Co. v. Corporation of Catholic Bishop*.[24] The issue there was whether operation of a convent for Catholic nuns constituted a residential use. The court in *Mains Farm* rejected the argument that *Hunter* controlled, saying the cases were different and *Hagemann* was more on point.[25] Although the court said it might well apply the primary/incidental test, it reached the same result for the same reason as in *Hagemann*: it looked at the clear distinction between business and residential use and found the business use incompatible with the covenant restricting use of the property to residential purposes.[26] We use that same reasoning to reach the same result.

## Attorney Fees

Respondents Wojdyla request attorney fees for answering the petition now before us in the event we affirm the Court of Appeals. They would not be entitled under RAP 18.1(j) to reasonable attorney fees for answering the petition before this court, even if we did affirm the Court of Appeals, because that court did not award attorney fees to them. We deny their request for attorney fees.

## Summary and Conclusions

The operator of a licensed child day care facility in a residence in a subdivision violates a restrictive covenant which provides that the "property shall be used for residential purposes only".

Respondents Wojdylas' operation of a licensed child day care facility in their residence in the Tweed Twenty subdivi-

---

[24]98 Wash. 112, 167 P. 100 (1917).

[25]*Mains Farm*, at 819-20.

[26]*Mains Farm*, at 820-21.

sion constitutes operation of a business and is thus in violation of the restrictive covenant limiting use of their property to "residential purposes only".

We reverse the Court of Appeals, Division One, and affirm the judgment of the Whatcom County Superior Court enjoining Respondents Christopher J. and Jadranka Z. Wojdyla from operating a residential child day care facility in violation of the restrictive covenant limiting use of the property in the Tweed Twenty subdivision to "residential purposes only."

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, and JOHNSON, JJ., concur.

MADSEN, J., concurs in the result.

GUY, J. (dissenting) — The bright-line rule advanced by the majority shuts down every home office and business in the state subject to a "residential purposes only" covenant. Because the rule advanced by the majority extends *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 854 P.2d 1072 (1993) and *Hagemann v. Worth*, 56 Wn. App. 85, 782 P.2d 1072 (1989), and disregards *Hunter Tract Imp. Co. v. Corporation of Catholic Bishop*, 98 Wash. 112, 167 P. 100 (1917), I respectfully dissent.

The Wojdylas' day care presents none of the extreme factual characteristics found in *Mains Farm* and *Hagemann*. In both *Mains Farm* and *Hagemann*, the residential properties were used 24 hours a day, 7 days a week for adult care, the properties were substantially remodeled to accommodate live-in adult residents, and outside workers were employed.

In addition, the restrictive covenants in *Mains Farm* and *Hagemann* were different and restricted more activity than the Tweed Twenty "residential purposes only" covenant. In *Mains Farm*, the covenant limited the property to *"single family residential purposes"*. *Mains Farm*, 121 Wn.2d at 813. This court held, "[i]n this case the 'main use and purpose' is not to provide a single family residence, but to pro-

vide 24-hour protective care and supervision in exchange for money." *Mains Farm*, 121 Wn.2d at 820. In *Hagemann*, the covenant contained an explicit prohibition against any "business, industry or commercial enterprise of any kind" in addition to a "single-family residences" restriction. *Hagemann*, 56 Wn. App. at 86-87. The Court of Appeals held: "When the covenant restricting business of 'any kind or nature' is viewed in context with the residential purpose of the plat, we conclude the declaration was clearly intended to prohibit foster homes as well as boarding homes." *Hagemann*, 56 Wn. App. at 91-92.

Contrary to the majority opinion, I see no sound reason in logic, policy, or legal precedent why this court should apply the holding of *Mains Farm* and *Hagemann*, cases involving 24-hour adult care and "single family" and "no business use" covenants, to a case involving a child day care and a "residential purposes only" covenant.

Furthermore, the majority's interpretation of *Mains Farm* and *Hagemann* erroneously assumes that business uses are per se incompatible with residential uses. This conclusion overlooks the intent behind a "residential purposes only" covenant — a desire to preserve the residential character of the neighborhood and to make the neighborhood more attractive for residential purposes. *See Mains Farm*, 121 Wn.2d at 815. The majority's bright-line rule ignores the clear fact that some business activities are unobtrusive and in no way make a neighborhood any less attractive for residential purposes. For example, an architect, a writer, or a salesperson working full time out of their residence, with little if any structural changes and a minimal increase in traffic, does not alter the character of a residential neighborhood.

In lieu of the bright-line "no business use" rule advanced by the majority, this court should adhere to *Hunter Tract* and *Mains Farm* and examine whether the questioned activity is an incidental use of the residence when compared to its main use and purpose. *Hunter Tract*, 98 Wash. at 115; *Mains Farm*, 121 Wn.2d at 820.

In *Mains Farm*, this court examined the main use and purpose of a residence to determine whether a business activity violated a restrictive covenant.

> In this case the "main use and purpose" is not to provide a single family residence, but to provide 24-hour protective care and supervision in exchange for money.
>
> . . . .
>
> Pursuant to *Hunter Tract Imp. Co. v. Corporation of Catholic Bishop*, 98 Wash. 112, 167 P. 100 (1917), the court must distinguish between an incidental use and the main use and purpose. . . .

*Mains Farm*, 121 Wn.2d at 820-21.

Under *Hunter Tract, Mains Farm*, and *Hagemann*, business use of property is balanced against residential use. In exceptional circumstances, the main use and purpose of the property is clearly business, *i.e.*, the property is used for business purposes 24 hours a day, 7 days a week. *See Mains Farm Homeowners Ass'n v. Worthington, supra; Hagemann v. Worth, supra.* In all other situations, the business use and the residential use are balanced for their effect on the residential neighborhood. *See Hunter Tract Imp. Co. v. Corporation of Catholic Bishop, supra.* Activities that alter the character of a neighborhood are prohibited. Factors used to determine whether the character of a residential neighborhood is altered include, but are not limited to: structural changes, increased noise levels, increased pedestrian or vehicular traffic, outside employees working in the residence, increased pollution, hours of operation, and public safety. The mere fact that an activity may affect one or all of these factors is not alone dispositive. The crucial inquiry is whether one factor or a combination of factors causes the neighborhood to lose its character as a place of residence.

Under this analysis, the Metzners allege an increase in noise from the Wojdylas' day care altered the character of their residential neighborhood. Noise, if significant and repetitious, may on its own change the character of a residential neighborhood. Here, affidavits provided by the Wojdylas contradict the claims made by the Metzners that noise changed the character of the neighborhood. Some neighbors

even stated they were unaware the Wojdylas operated a day care facility out of their home. Because the record is inadequate to determine whether the Wojdylas' day care changed the character of the neighborhood, I would remand the case to Superior Court for further findings of fact.

UTTER and DURHAM, JJ., concur with GUY, J.