[No. 19108-7-III. Division Three. February 15, 2001.]

GORDON PECKHAM, *Respondent*, v. THOMAS MILROY, *Appellant*.

*C. Raymond Eberle*, for appellant.
*Jerry L. Kagele*, for respondent.

SWEENEY, J. — A neighborhood covenant prohibits home businesses. So, the trial court enjoined Thomas Milroy's wife from operating a home day care after a neighbor complained.

The question before us is whether the trial court erred by enjoining the day-care business because the covenant was abandoned or violated public policy. The trial court's findings are amply supported by the evidence here. And those findings amply support the court's conclusion of law that the covenant had not been abandoned through disuse. Nor does it violate public policy. We also agree that neither laches nor estoppel bars Mr. Peckham's claim here. Accordingly, we affirm.

## FACTS

The material facts are not disputed. Spokane Terrace was platted in 1907. It includes the houses at issue here. The neighborhood is called the Spokane Terrace Addition (STA). The developer subjected some of the lots to restrictive covenants in 1955. One prohibited use of the property "for business purposes of any kind whatsoever." Clerk's Papers at 38.

Gordon Peckham moved into the STA in 1958. Thomas Milroy's parents moved into the STA in 1992. The Milroy property is subject to the restriction.

Mr. Milroy's mother fell and broke her hip in 1994. She required assistance after that. Mr. Milroy, his wife, and family decided to move into his mother's home in the STA.

They remodeled the home to accommodate the Milroy family, which included five children. They began to remodel

in August 1995 and completed in December 1995. Mr. Peckham watched and photographed the construction. He complained to the county about the construction in November 1995. And he filed zoning complaints in February 1996. The Milroys moved into the home in December 1995. Mrs. Milroy obtained a day-care license and began running a day care.

The children are noisy. Mr. Peckham can hear them from inside his home. Parents of the children park in front of Mr. Peckham's house. They walk across his yard. And they park in the alley behind his house.

Mr. Milroy's mother passed away in July 1996. He inherited the home. In July 1996 Mr. Peckham told Mrs. Milroy she was violating the covenants. Mr. Peckham sued to enjoin the day-care operation in November 1997.

Several home businesses operated in the STA in violation of the restrictive covenant. These include a drapery business, a painting business, a small construction business, and a TV repair service.

Following a trial the court concluded that Mrs. Milroy's day care was a business. And that Mr. Peckham had an equitable right to enforce the covenant. The court enjoined the Milroys from operating the day care.

## ANALYSIS

ABANDONMENT.

Mr. Milroy first argues the covenant prohibiting home businesses has been abandoned.

■ Abandonment requires proof that prior violations have eroded the general plan and enforcement is therefore inequitable. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 342, 883 P.2d 1383 (1994). A covenant is abandoned when it has been "habitually and substantially violated." *Id.* But a few violations do not constitute abandonment. *White v. Wilhelm*, 34 Wn. App. 763, 769-70, 665 P.2d 407 (1983).

Mr. Milroy presented evidence of four home businesses in the STA. A drapery business has been run from a home in the STA since the late 1970s. A painting business was run from 1994 to 1997. A small construction and TV repair business was operated between 1963 and 1972. And a craft business has been operated from a home for the past five to six years.

The STA covers 41 blocks and each block includes approximately 38 to 40 lots. The violations are neither habitual nor substantial. *See Mountain Park Homeowners*, 125 Wn.2d at 342. They comprise a very small percentage of the subdivision. A few violations do not constitute abandonment. *White*, 34 Wn. App. at 769-70.

Substantial evidence supports the trial court's determination that the covenant has not been abandoned.

LACHES AND ESTOPPEL.

Mr. Milroy next contends that Mr. Peckham knew Mrs. Milroy intended to operate a home day care as early as August 1995. Yet Mr. Peckham waited until November 1997 to file this action. The delay caused injury to the Milroys and was therefore unreasonable.

■ *Laches.* Laches requires: "(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay." *Buell v. City of Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972); *see Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 635, 733 P.2d 182 (1987).

Mr. Peckham saw the Milroys remodel. But he did not know they intended to build a day-care center until after the construction started. The Milroys incurred construction expenses before Mr. Peckham knew they intended to violate the covenant.

Mr. Peckham objected to the project through early 1996. Mr. Peckham tried to enlist the aid of the county to stop the

day-care operation. In July 1996 he told Mrs. Milroy that she was violating the covenants.

Mr. Milroy testified that the original purpose of remodeling was to provide room for his family, not a commercial day care. Mr. Milroy stated he and his wife did not originally plan to continue the day-care service. But then they decided they needed the money. He testified the decision to operate the day care was made in late 1995, after remodeling the home.

The defense of laches requires showing all three elements. *See Buell*, 80 Wn.2d at 522. The Milroys intended to remodel for reasons other than the day care. The cost of the remodel could not, then, result from Mr. Peckham's delay in bringing this action.

The court found that Mr. Peckham did not unreasonably delay the suit. That finding is amply supported by this record.

■ ■ *Equitable Estoppel.* Equitable estoppel requires: "(1) an admission, statement or act inconsistent with the claim asserted afterward; (2) action by the other party in reasonable reliance on that admission, statement or act; and (3) injury to that party when the first party is allowed to contradict or repudiate its admission, statement or act." *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 849, 999 P.2d 54 (2000). Each element must be proven by clear, cogent, and convincing evidence. *Id.* Equitable estoppel is not favored. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992).

■ Mr. Milroy has not established any of the elements of equitable estoppel. Mr. Peckham made no statements and he took no actions inconsistent with his current position— the day care violates the covenant.

Mr. Milroy argues that Mr. Peckham acquiesced to the day care through his silence. Silence can lead to equitable estoppel—"[w]here a party knows what is occurring and would be expected to speak, if he wished to protect his interest, his acquiescence manifests his tacit consent." *Bd.*

*of Regents v. City of Seattle*, 108 Wn.2d 545, 553-54, 741 P.2d 11 (1987). Mr. Peckham was not silent. He complained to the county. He complained to Mrs. Milroy.

Neither can the Milroys show that they relied on Mr. Peckham's acquiescence. Mrs. Milroy talked to representatives of the city, county, and state about the day-care operation. She did not rely on Mr. Peckham.

CHANGED NEIGHBORHOOD CONDITIONS.

■■ Changed conditions in a neighborhood can modify or eliminate restrictive covenants. But the changes must be material. A material change in the character of the neighborhood can defeat the object or purpose of the restriction. *St. Luke's Evangelical Lutheran Church v. Hales*, 13 Wn. App. 483, 485, 534 P.2d 1379 (1975).

Whether the character of a neighborhood has changed is a question of fact. *St. Luke's*, 13 Wn. App. at 486. Again we review factual determinations for substantial evidence. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999).

Mr. Milroy relies on *Stewart v. Jackson*.[1] *Stewart* is not on point. There, the Indiana Court of Appeals held that an unlicensed home day care was not a business. And it did not therefore violate the restrictive covenant prohibiting commercial uses. *Stewart*, 635 N.E.2d at 193.

■ Washington law is clear. A licensed home day care is a business that violates covenants restricting property to residential purposes only. *Metzner v. Wojdyla*, 125 Wn.2d 445, 452, 886 P.2d 154 (1994). Mrs. Milroy operates a licensed day care. The STA is a residential neighborhood. The Milroys violate the restrictive covenant by doing so.

PUBLIC POLICY.

■■ Mr. Milroy argues that Washington public policy makes quality child care a priority. And this public policy should override restrictive covenants preventing home day care.

---

[1] 635 N.E.2d 186 (Ind. Ct. App. 1994).

Mr. Milroy cites statutes which prohibit cities, towns, and counties from prohibiting home day care in residentially zoned areas. RCW 35.63.185; RCW 36.70A.450. The regulations do not, however, limit private parties from restricting land use. Restrictive covenants in residential neighborhoods are enforceable. *Metzner*, 125 Wn.2d at 450.

 If restrictive covenants that incidentally prohibit home day care should be repealed on public policy grounds, the decision should come from the Legislature—not this court. *See Mut. of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 378, 622 P.2d 1234 (1980) (determining public policy is not the judiciary's function).

Affirmed.

KURTZ, C.J., and SCHULTHEIS, J., concur.

Review denied at 144 Wn.2d 1010 (2001).