WACHOVIA BANK AND TRUST COMPANY, N.A., TRUSTEE UNDER THE WILL OF LOUIS BOUNOUS, APPELLEE v. FRANK L. BOUNOUS, INDIVIDUALLY AND FRANK L. BOUNOUS, EXECUTOR OF JUSTINE BOUNOUS, APPELLANT

No. 8025DC1206

(Filed 15 September 1981)

1. **Judgments §§ 21.1, 34.2— consent judgment—failure to conduct hearing to ascertain consent**

    Absent any circumstances to put the court on notice that one of the parties does not actually consent to the judgment, a judge may properly rely upon the signatures of the parties as evidence of consent.

2. **Appeal and Error § 57.2— findings not supported by evidence—other findings support judgment**

    Where, even disregarding several erroneous factual findings, there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed.

APPEAL by defendant from *Crotty, Judge.* Order entered 23 July 1980 and modified and corrected 31 July 1980 in District Court, BURKE County. Heard in the Court of Appeals 29 May 1981.

Appellee claims title to certain land in Burke County as trustee, having succeeded to that office as successor to the First National Bank of Morganton, under the following language of the will of Louis Bounous:

"I give, devise and bequeath to my sister, Gistine (Justine) Bounous, a tract of land upon which she now lives containing about 25 acres, the same being located on the South side of U.S. Highway No. 70 in Lovelady Township, Burke County, for and during the term of her natural life, and upon her death, the remainder in fee simple absolute to the First National Bank of Morganton, North Carolina, as Trustee, to be held and administered by said Trustee for the uses and purposes set forth in Article VII of this my Will."

Article VII of the will provides for the payment of trust income to the widow of Louis Bounous (Dovie Bounous), who was still living at the time of the institution of this action in 1978.

Justine Bounous died on 24 October 1977. Appellant claims title to the land as sole beneficiary under the will of his sister, Justine Bounous, asserting that Justine Bounous acquired title to the property by her actual, open, notorious, continuous, exclusive, hostile, and adverse possession of the tract from 1915 to 1977.

Shortly after the death of Justine Bounous, appellant prepared a burial plot on the tract for the interment of his sister's remains. Appellee's opposition to this proposed action by appellant led to the first civil proceeding in this matter. Appellee obtained a temporary restraining order and sought a permanent injunction to prevent appellant from burying Justine Bounous upon the tract. By consent judgment defendant and his wife Mary Bounous agreed not to bury decedent's body upon the land in question.

Soon thereafter, appellee served on appellant as executor a request for payment of past-due ad valorem taxes out of the assets of the estate of Justine Bounous, and demanded removal from the land of all personal property, including a mobile home, within thirty days. Appellant did not comply giving rise to this

present civil action. Appellee filed complaint seeking (1) payment of the past-due ad valorem taxes, (2) removal of all personal property from the premises within thirty days, or the cost including attorney's fees of such removal by appellee if appellant failed to comply, (3) damages for appellee's expenses incurred in preventing appellant's attempts to bury the remains of Justine Bounous upon the premises, and (4) costs to be taxed to appellant. Appellant answered denying the material allegations of the complaint and asserting title by devise from Justine Bounous, fee simple owner of the property at her death by adverse possession. Appellant sought a declaration of title in himself, that appellee's claim of title be forever barred, that appellee's action be dismissed, and that costs be taxed to appellee. Appellee replied denying the allegations of appellant in his counterclaim and later amended its complaint to seek damages for appellant's wrongful failure to relinquish the property in the amount of $15,000.00.

On 21 May 1980 a consent judgment was entered in District Court by the Honorable L. Oliver Noble, Jr., reciting that appellee and appellant had reached the following agreement:

(1) Appellant and his wife would execute a quit-claim deed naming appellee as grantee;

(2) Appellee was to recover $2,000.00 in satisfaction of appellant's liability, if any, under the first consent judgment settling the burial site of Justine Bounous;

(3) Appellant would remove the mobile home from the premises within sixty days and agreed not to return on penalty of contempt;

(4) Appellee was given the right to remove the mobile home if it remained on the premise beyond sixty days and appellant agreed to pay appellee's costs of removal agreeing that failure to make payment for such costs upon demand would constitute contempt;

(5) Appellant was given the right to purchase the property when and if appellee sold it for $1.00 above the highest reasonable offer; and

(6) Costs would be taxed to appellant.

---

Wachovia Bank v. Bounous

---

Beneath the judge's signature appears the following language:

"WE CONSENT TO ENTRY OF THE FOREGOING JUDGMENT AND AND AGREE TO BE BOUND BY THE TERMS THEREOF:

WACHOVIA BANK & TRUST CO., N.A.
By: s/Ben (Illegible)
Vice-President

PATTON, STARNES & THOMPSON, P.A.
By: (ILLEGIBLE)
Counsel for Plaintiff

s/FRANK L. BOUNOUS
s/FRANK L. BOUNOUS, EXECUTOR
Executor Estate of Justine Bounous

HAIRFIELD & ROBINSON
By: s/Harold M. Robinson
Counsel for Defendants"

Nine days later appellant filed a motion for relief from the judgment under G.S. 1A-1, Rule 60(b)(6) on the grounds that (1) appellant "did not understand the nature, extent, effect and consequences of the Consent Judgment . . . ," (2) the land in question was worth in excess of $30,000 and thus the District Court lacked jurisdiction in the matter, and (3) "the trial court failed to conduct an independent hearing to make an independent determination of a factual and legal basis for the entry of this Judgment." A hearing on appellant's motion was held before the Honorable Edward J. Crotty.

## MOVANT'S EVIDENCE

Appellant testified that he was almost eighty years old. He had a first grade education. He had never been declared incompetent. He understood what a check was and had a little money in a checking account. Appellant is hard of hearing. He went to see his lawyers several times, but he never talked to them because he could never hear them. He does not read, nor understand, some words. He wrote to Raleigh about title to the property and received a reply explaining adverse possession and homesteading but he did not understand it. Appellant hired a lawyer because he had

trouble hearing and he did not understand things very well. He hears a noise when someone talks, but cannot make out the words. He can hear and understand his daughter's voice better than other voices. The lawyers never told appellant what the papers he signed were until after he signed them. He assumed the papers were necessary to get his case to trial. He glanced over the papers but there were words in them that he did not understand and he failed to get any understanding of the effect of the papers. The lawyers told him nothing about the papers except where to sign. After the papers were signed, appellant wrote a check to his attorneys. He understood that the money was to go to the Bank, but he never knew what it was for.

Appellant's daughter testified that the papers were never explained to her or her parents. She was out of the room for about five minutes when the papers were signed. She understood that the $2,000.00 was to go to the Bank to get them off her daddy's back. She went to the clerk's office and read the papers after they were filed. Not until then did she realize her father had given up all claim to the land. The day the quitclaim deed was signed, Mr. Robinson did not communicate with her father, and Mr. Hairfield had a map over two hundred years old and an old deed from England showing it to her mother and father. It was never explained to her that a deed would be signed.

Mrs. Bounous testified that she had not been told what she was signing. Her husband was asleep when the papers were ready to be signed and she had to call him. She has never seen Mr. Robinson. Mr. Hairfield told her to sign a paper and she did.

### Non-Movant's Evidence In Defense Of Motion

Harold Robinson testified that he represented appellant in his lawsuit. He was aware of appellant's hearing difficulty. Sometimes he spoke to appellant through his daughter, and on other occasions he was able to make himself understood by speaking loudly. Even though it was difficult at times, Mr. Robinson was always able to communicate with appellant. The consent judgment at issue in this case came about after lengthy negotiations between Robinson and appellee Bank's attorney. The compromise settlement was reached with appellant's express knowledge, permission, and consent. He explained the consent judgment to ap-

pellant and to appellant's daughter. Robinson's law partner, Mr. Hairfield, repeated Robinson's explanation of the legal papers in a much louder voice immediately after Robinson had explained them. Robinson never explained to Mrs. Bounous that she would be signing a quitclaim deed that would give up any right that she may have had in the property. He did explain at length the significance of all the documents to appellant and to appellant's daughter.

The court found that the compromise settlement was negotiated by appellant's attorney, Mr. Robinson, with the permission of appellant and that appellant indicated his understanding of the terms of the agreement. He concluded that the consent judgment and quitclaim deed were knowingly signed by appellant with his informed consent after explanation of the consequences by two competent and reputable attorneys. Appellant's motion for relief from the consent judgment was denied.

*Patton, Starnes & Thompson by Robert L. Thompson for plaintiff appellee.*

*Brewer & Brady by Robert M. Brady for defendant appellant.*

ARNOLD, Judge.

[1] Appellant argues that Judge Noble erred by failing to conduct an independent hearing to ascertain the existence of actual consent on the part of all parties to the consent judgment, and that Judge Crotty in turn erred by failing to grant relief under Rule 60 based upon the lack of such investigatory hearing. The argument is meritless.

Judge Noble was presented with a document purporting to be a negotiated settlement of the parties' lawsuit. It was signed by all parties. The evidence before Judge Crotty was that the only person present when Judge Noble signed the judgment was appellee's attorney. There is no evidence that Judge Noble was ever aware of appellant's alleged lack of consent to the judgment.

"It is a settled principle of law in this State that a consent judgment is the contract of the parties entered upon the records of a court of competent jurisdiction with its sanction and approval." *Highway Comm. v. Rowson,* 5 N.C. App. 629, 631, 169 S.E. 2d 132, 134 (1969). "Persons *sui juris* have a right to make any contract not contrary to law or public policy." *Construction*

*Co. v. Contracting Co.,* 1 N.C. App. 535, 538, 162 S.E. 2d 152, 154 (1968). "It is the general rule that one who signs a contract is presumed to know its contents . . . ." *Ellis v. Mullen,* 34 N.C. App. 367, 370, 238 S.E. 2d 187, 189 (1977).

We believe that it is beyond question that, absent any circumstances to put the court on notice that one of the parties does not actually consent thereto, a judge may properly rely upon the signatures of the parties as evidence of consent to a judgment. There was no evidence at the hearing on appellant's Rule 60(b) motion that Judge Noble had any reason to doubt the genuineness of appellant's consent. We refuse to impose upon the trial courts of this State the onerous responsibility of holding investigatory hearings to determine the genuineness of the consent of every party who signs a consent judgment. Whether appellant's advanced age and hearing impairment constitute circumstances which alter the general rule stated above will not be considered on this appeal since it does not appear that Judge Noble was ever apprised of these circumstances.

Appellant's reliance on the cases of *Owens v. Voncannon,* 251 N.C. 351, 111 S.E. 2d 700 (1959); *Lee v. Rhodes,* 227 N.C. 240, 41 S.E. 2d 747 (1947); *Lalanne v. Lalanne,* 43 N.C. App. 528, 259 S.E. 2d 402 (1979); *et al,* is misplaced. In all those cases the lack of assent of one of the parties to the judgment was manifested to the trial court *before* the judgment was signed or one of the parties failed to sign the judgment. This not being so in the case *sub judice,* these cases have no applicability to the present situation. Appellant's first argument must be overruled.

[2] Appellant next attacks the basis in competent evidence upon which the findings and conclusions of the Order of 31 July 1980 were based. The findings of the court will not be reviewed if there is any competent evidence in the record to support them. *Transit, Inc. v. Casualty Co.,* 285 N.C. 541, 206 S.E. 2d 155 (1974). An exception to a finding of fact not supported by evidence must be sustained and the finding of fact disregarded. *Harrelson v. Insurance Co.,* 272 N.C. 603, 158 S.E. 2d 812 (1968).

Appellant excepts to every material finding of fact in the Order. We have examined all of appellant's exceptions and believe that three of them must be sustained.

In finding of fact No. 7 the court found that Attorney Robinson had a reputation for being painfully honest. No reputation evidence was offered at the hearing. There was no evidence upon which the court could properly base a finding as to Robinson's reputation for honesty. This portion of finding of fact No. 7 must be disregarded.

In its conclusions of law, the court made the additional finding that the significance of the quitclaim deed was explained to appellant "by two competent and reputable attorneys." Again, there was no evidence before the court that the attorneys were either competent or reputable. This portion of the court's conclusions must also be disregarded.

In finding of fact No. 10 the court found that appellant's wife signed the quitclaim deed "to insure that valid non-warranty title would be conveyed by said deed." The evidence of the movant was that Mrs. Bounous did not know what she had signed. The only evidence for the non-movant was Robinson's statement that he "did not advise Mrs. Bounous that she would be signing a quitclaim deed that would give up any right that she may have in the property." There was, therefore, no evidence to support this finding and it must be disregarded.

The only issue before Judge Crotty on this motion was whether appellant was entitled to relief from the consent judgment. It was therefore immaterial whether the lawyers who explained the contents of the judgment were "painfully honest," "competent," or "reputable." It was similarly immaterial whether Mrs. Bounous was advised of the significance of the quitclaim deed. It was the judgment that was before the court, and Mrs. Bounous did not sign the judgment nor was she a party to the action. We hold that, even disregarding these three erroneous factual findings, there were sufficient findings of fact based on competent evidence to support the trial court's conclusions of law and order.

That portion of the proceedings at the hearing of appellant's Rule 60(b) motion contained in the record reflects no evidence or argument that appellee's action exceeded the jurisdictional amount for cases tried in District Court. At any rate, no argument is brought forward on appeal and we deem this ground for

relief from judgment abandoned at this point, if not earlier abandoned at the hearing.

Affirmed.

Judges MARTIN (Robert M.) and HILL concur.