BLACK HORSE RUN PROPERTY OWNERS ASSOCIATION—RALEIGH, INC.,
A NON-PROFIT NORTH CAROLINA CORPORATION v. GEORGE ALLEN KALEEL
AND WIFE, FAYE SMITH KALEEL

No. 8710SC363

(Filed 15 December 1987)

**1. Evidence § 33.2— statements about restrictive covenants—hearsay**

   Statements made by agents of a subdivision developer to purchasers of a subdivision lot that a radio tower was not a "structure" within the meaning of the subdivision restrictive covenants were inadmissible as hearsay. N.C.G.S. § 8C-1, Rule 801(c).

**2. Deeds § 20.4— restrictive covenants—radio towers as "structures"**

   Three radio towers and supporting guy wires and concrete pads are "structures" within the meaning of subdivision restrictive covenants so that written approval of the Architectural Control Committee of the subdivision property owners association was required before they could properly be erected on a subdivision lot.

**3. Deeds § 20.8— no waiver of restrictive covenants**

   A subdivision property owners association did not waive its right to enforce a restrictive covenant requiring written approval of plans for any structures against three radio towers erected by a subdivision resident when it gave another resident oral permission to erect a single radio tower not visible to passersby from the street without the submission of plans for approval.

APPEAL by defendants from *Smith, Judge.* Judgment entered 30 November 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 22 October 1987.

This is an action to enforce subdivision restrictive covenants. Plaintiff, Black Horse Run Property Owners Association—Raleigh, Inc. (The Association), is a North Carolina non-profit corporation, the members of which are property owners in Black Horse Run Subdivision in Wake County. Defendants, Mr. and Mrs. Kaleel, are the owners of a lot in the subdivision. Plaintiff brought this action to compel the Kaleels to remove three radio towers, each being at least 100 feet tall, from their lot.

The parties stipulated that the Kaleels' lot is subject to certain restrictive covenants recorded in the Wake County Registry and applicable to Black Horse Run Subdivision. The restrictive covenants provide for their enforcement by The Association and contain, *inter alia,* the following restriction:

1. All lots in said Residential Areas shall be used for residential purposes exclusively, except that Company hereby reserves the right to use or allow the use of any of the above described lots or parcels as streets for the purpose of providing access to and from other property, whether or not located in said subdivision. No structure or fence or wall shall be erected, placed or altered on any tract until the construction plans and specifications and a plan showing location of said structure or fence have been approved by the Architectural Control Committee of the BLACK HORSE RUN Property Owners' Association (Declaration of Covenants of said Association being filed herewith) as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation. No structure, except as hereinafter provided shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single family dwelling not to exceed two and one-half (2½) stories in height, a stable, and such other accessory buildings as allowed by the Architectural Control Committee. No structure, except a stable, (barn) and fence may be constructed prior to the construction of the main building.

The parties also stipulated that the Kaleels did not submit plans or specifications for construction or location of the radio towers in their lot to the Architectural Control Committee prior to erection of the towers because the Kaleels contend that placement of the towers is not prohibited by the restrictive covenants. According to their stipulation, each tower is supported by three guy wires; each guy wire is anchored in a concrete "pad" weighing 5,000 to 6,000 pounds. Of the defendants' approximately one and one-half acre lot, the towers, guy wires and pads cover an area of approximately 150 square feet. The parties stipulated further that the Kaleels, prior to constructing a house upon their lot, submitted house plans and specifications to the Architectural Control Committee and that such plans were approved.

The case was heard without a jury. The trial court made findings of fact and concluded that the radio towers, guy wires and concrete pads are structures within the meaning of the restrictive covenants and are violative of those covenants. The Kaleels were ordered to dismantle and remove the towers. They appeal.

*Boxley, Bolton & Garber, by Ronald H. Garber, for plaintiff-appellee.*

*George R. Barrett and John T. Hall for defendants-appellants.*

MARTIN, Judge.

The basic issue raised by this appeal is whether the Kaleels' radio towers are "structures" within the meaning of the restrictive covenants, so that approval by plaintiff's Architectural Control Committee was required prior to their erection. We hold that they are and affirm the trial court's judgment.

Restrictive covenants are not generally favored in the law; any ambiguities in the restrictions are to be resolved in favor of the free and unrestricted use of the land. *Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E. 2d 174 (1981). Nevertheless, such covenants must be reasonably construed to give effect to the intention of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction. *Long v. Branham*, 271 N.C. 264, 156 S.E. 2d 235 (1967).

> In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions.

*Id.* at 268, 156 S.E. 2d at 238 (emphasis original). A restrictive covenant which requires prior approval of building plans is enforceable when it is applicable to all lots in a subdivision as part of a uniform plan of development. *Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 218 S.E. 2d 476 (1975).

[1] Both Mr. and Mrs. Kaleel offered testimony tending to show that during the negotiations for the purchase of their lot, and at the time of the closing, representatives of the original developer of the subdivision told them that radio towers such as those erected by appellants were not considered a "structure" within the meaning of the restrictive covenant. After permitting defendants to make an offer of proof, the trial court sustained plaintiff's objection to the testimony. The Kaleels assign error to the court's ruling, contending that the term "structure," as used in the

restrictive covenant, is ambiguous and that statements made by agents of the developer are admissible to show the developer's intention that its use of that term in the restrictive covenant would not apply to a radio tower. We disagree. The developer is not a party to this action; neither of the agents to whom the statements were attributed was called as a witness. The statements were offered by appellants "in evidence to prove the truth of the matter asserted" and are, therefore, inadmissible as hearsay. G.S. 8C-1, Rule 801(c). This assignment of error is overruled.

Notwithstanding its exclusion of the Kaleels' testimony concerning the developer's representations, the trial court found that such representations had been made and that the Kaleels had, at least in part, relied upon those representations when they purchased their lot. The Kaleels assign error to these findings, since the evidence supporting them had been ruled inadmissible. However, the Kaleels have failed to show that they have been prejudiced in any respect by the error as the improper findings were favorable to them and, in any event, were not required to sustain the court's conclusions of law. Where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions. *Wachovia Bank v. Bounous*, 53 N.C. App. 700, 281 S.E. 2d 712 (1981); *Allen v. Allen*, 7 N.C. App. 555, 173 S.E. 2d 10 (1970).

[2] The Kaleels assign error to the trial court's conclusion that the radio towers which they erected, along with the supporting guy wires and concrete pads, are "structures" within the meaning of the restrictive covenants. They contend that the term "structures" is ambiguous and that the court made no findings of fact with respect to the meaning which the parties intended the term to have. We find no ambiguity and agree with the conclusion of the trial court.

Our Supreme Court has held that radio towers are structures within the meaning of statutes levying a tax upon materials "which shall enter into or become a part of any building or any other kind of structure . . . ." *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 69 S.E. 2d 505 (1952). The Court noted that "structure" is defined as "something constructed or built" and stated "[t]hat a radio tower comes within the accepted defini-

tion of the term 'structure' would seem to be beyond question."
*Id.* at 207-8, 69 S.E. 2d at 509. Courts of other states have held
that radio towers are "structures" within the meaning of restric-
tive covenants. *See Mitchell v. Gaulding,* 483 S.W. 2d 41 (Tex.
1972) (125-foot radio tower is a "structure" for purposes of restric-
tive covenant prohibiting all structures other than single-family
residences, private garages and other outbuildings necessary for
single-family use); *La Vielle v. Seay,* 412 S.W. 2d 587 (Ky. 1966)
(64-foot television reception and ham radio transmission tower is a
"structure" for the purposes of restrictive covenant governing
construction of a building, wall, fence "or other structure");
*Parker v. Hough,* 420 Pa. 7, 215 A. 2d 667 (1966) (50-foot radio
tower is a "structure" for purposes of deed restriction prohibiting
structures other than single family dwellings, garages and speci-
fied accessory structures). This assignment of error is overruled.

[3] Finally, the Kaleels contend that The Association has waived
its right to enforce the restrictive covenant and that the trial
court erred in its conclusion to the contrary. Their argument is
premised upon evidence, and findings by the trial court, that
another resident of the subdivision had erected a single radio
tower upon his lot after receiving oral permission from the Ar-
chitectural Control Committee, but without submitting plans for
approval. The tower was subsequently dismantled and removed
when the owner sold his lot and moved away from the subdivi-
sion.

In our view, these findings do not compel a conclusion that
The Association has waived its right to enforce the restriction.
An acquiescence in a violation of restrictive covenants does not
amount to a waiver of the right to enforce the restrictions "unless
changed conditions within the covenanted area are 'so radical as
practically to destroy the essential objects and purposes' of the
scheme of development." *Barber v. Dixon,* 62 N.C. App. 455, 459,
302 S.E. 2d 915, 918, *disc. rev. denied,* 309 N.C. 191, 305 S.E. 2d
732 (1983); *quoting Tull v. Doctors Building, Inc.,* 255 N.C. 23, 39,
120 S.E. 2d 817, 828 (1961). *Accord Williamson v. Pope,* 60 N.C.
App. 539, 299 S.E. 2d 661 (1983) (plaintiffs' failure to enforce cove-
nant against motel in residential area did not waive plaintiffs'
right to enforce covenant against convenience store); *Mills v.
Enterprises, Inc.,* 36 N.C. App. 410, 244 S.E. 2d 469, *disc. rev.
denied,* 295 N.C. 551, 248 S.E. 2d 727 (1978) (use of residential lot

for business parking was not significant enough to constitute waiver of right to enforce covenant prohibiting commercial use); *Van Poole v. Messer,* 25 N.C. App. 203, 212 S.E. 2d 548 (1975) (plaintiffs' failure to enforce covenant against a house trailer on another lot 800 feet from defendants' trailer did not render covenant unenforceable); *Cotton Mills v. Vaughan,* 24 N.C. App. 696, 212 S.E. 2d 199 (1975) (plaintiffs' failure to object to the use of four other residences for business purposes does not constitute waiver of protection of restrictive covenant). *See also* Webster, *Real Estate Law in North Carolina* § 389 (Hetrick rev. 1981 and Supp. 1987). In our view, permitting one property owner to erect a single radio tower which, according to the evidence, was not visible to passersby from the street does not amount to such a radical departure from the restrictive covenants as "practically to destroy the essential objects and purposes" of the covenant and does not, therefore, constitute a waiver of plaintiff's right to enforce the restrictive covenants.

The Kaleels' remaining assignments of error neither merit discussion nor afford any grounds for disturbing the judgment of the trial court. The judgment is affirmed.

Affirmed.

Judges EAGLES and PARKER concur.