PATSY SIMPSON WILLIAMS, PLAINTIFF v. WARREN D. PALEY, CLAIRE PALEY, AND PALEY-MIDGETT, A NORTH CAROLINA GENERAL PARTNERSHIP, DEFENDANTS

No. 932SC411

(Filed 3 May 1994)

**Deeds §§ 82, 86 (NCI4th) — restrictive covenants to terminate upon certain conditions — no showing that conditions existed — no waiver**

The trial court properly concluded that the grantor of the property in question intended that a provision stating that restrictive covenants limiting the property to residential use would terminate when "adjacent or nearby properties are turned to commercial use" should be triggered only upon the substantial commercial use of multiple nearby or adjacent properties rather than upon any commercial use of a sole property in the vicinity at any point in time; furthermore, evidence of historical incidents occurring at different times was insufficient to show that plaintiff waived her right to enforce the restrictions or that the restrictive covenants otherwise terminated.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 196, 270, 281-287.**

Appeal by plaintiff from judgment entered 4 December 1992 by Judge Cy A. Grant, Sr., in Hyde County Superior Court. Heard in the Court of Appeals 3 February 1994.

This case involves plaintiff's claim for injunctive relief. The pertinent facts of this case are detailed in *Runyon v. Paley*, 331 N.C. 293, 416 S.E.2d 177 (1992). There, our Supreme Court, in reversing the decision of a divided panel of this Court, 103 N.C. App. 208, 405 S.E.2d 216 (1991), reversed the trial court's dismissal

of plaintiff's claim for failure to state a claim upon which relief could be granted. Our Supreme Court concluded that plaintiff Williams presented sufficient evidence to show that the covenants were real covenants and that she was entitled to seek enforcement of the restrictive covenants against defendants. *Runyon* 331 N.C. 293, 416 S.E.2d 177. Upon remand to the Superior Court, plaintiff moved for summary judgment as to her first cause of action, which sought an injunction against defendants' development of the condominiums on the property at issue. On 4 December 1992, the trial court entered a judgment which *inter alia* granted summary judgment for plaintiff as to her first cause of action and ordered that defendants were "enjoined from violating or continuing .to violate the restrictive covenants." The 4 December 1992 judgment also severed "[t]he second and third claims for relief of Charles Runyan . . . from the first cause of action for purposes of trial." The trial court also issued a "stay order" which stayed the mandate of its judgment during the appeal taken by defendants "provided, however, that pending such appeal, defendants shall undertake no further construction upon the 'Gaskins' lot,' nor shall defendants furnish or otherwise prepare for human occupancy units presently wholly or partially constructed, nor shall defendants sell, rent or otherwise transfer title or ownership or right of possession to said units." Defendants appeal.

> *Parker, Poe, Adams & Bernstein, by Charles C. Meeker and John J. Butler, for plaintiff-appellee.*

> *Young, Moore, Henderson & Alvis, P.A., by John N. Fountain, Henry S. Manning, and R. Christopher Dillon, for defendant-appellants.*

EAGLES, Judge.

Defendants contend that the trial court erred in granting summary judgment for plaintiff. We disagree and affirm.

I.

Initially, we note that an "injunction is a proper equitable remedy to enforce a restrictive covenant when the plaintiffs show that their remedy at law is inadequate and that they will suffer irreparable damage if the violation is allowed to continue." *Barber v. Dixon*, 62 N.C. App. 455, 457, 302 S.E.2d 915, 916, *disc. review denied*, 309 N.C. 191, 305 S.E.2d 732 (1983) (*citing Ingle v. Stubbins*,

240 N.C. 382, 82 S.E.2d 388 (1954); *Franzle v. Waters*, 18 N.C. App. 371, 197 S.E.2d 15 (1973)). *See Crabtree v. Jones*, 112 N.C. App. 530, 534, 435 S.E.2d 823, 825 (1993), *disc. review denied*, 335 N.C. 769, --- S.E.2d --- (3 March 1994) (issuance of an injunction depends upon a balancing of the equities between the parties which "is clearly within the province of the trial court"). The injunction here was granted upon plaintiff's motion for summary judgment pursuant to G.S. 1A-1, Rule 56.

Regarding G.S. 1A-1, Rule 56, our Supreme Court has stated:

The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972). As this Court remarked in *Koontz*, "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz*, 280 N.C. at 518, 186 S.E.2d at 901. All inferences are to be drawn against the moving party and in favor of the opposing party. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379; *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897.

*Branks v. Kern*, 320 N.C. 621, 623-24, 359 S.E.2d 780, 782 (1987).

## II.

In arguing that the trial court erred by entering summary judgment for plaintiff, defendants argue that "there exists a genuine issue of material fact as to whether nearby properties within 450 feet of the Gaskins lot have been 'turned to commercial use'" in a manner sufficient to terminate the restrictive covenants. We disagree.

The portion of the restrictive covenant, as written by plaintiff's predecessor in interest (Ruth Bragg Gaskins), at issue here provides:

BUT this land is being conveyed subject to certain restrictions as to the use thereof, running with said land by whomsoever owned, until removed as herein set out; said restrictions, which are expressly assented to by [the Brughs, predecessors in interest to defendants], in accepting this deed, are as follows:

(1) Said lot shall be used for residential purposes and not for business, manufacturing, commercial or apartment house purposes; provided, however, this restriction shall not apply to churches or to the office of a professional man which is located in his residence, and

(2) Not more than two residences and such outbuildings as are appurtenant thereto, shall be erected or allowed to remain on said lot. This restriction shall be in full force and effect until such time as adjacent or nearby properties are turned to commercial use, in which case the restrictions herein set out will no longer apply. The word "nearby" shall, for all intents and purposes, be construed to mean within 450 feet thereof.

To HAVE AND To HOLD the aforesaid tract or parcel of land and all privileges and appurtenances thereunto belonging or in anywise thereunto appertaining, unto them, the [Brughs], as tenants by the entirety, their heirs and assigns, to their only use and behoof in fee simple absolute forever, [b]ut subject always to the restrictions as to use as hereinabove set out.

Regarding the interpretation of restrictive covenants, in *Black Horse Run Ppty. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 85, 362 S.E.2d 619, 621 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988), this Court stated:

Restrictive covenants are not generally favored in the law; any ambiguities in the restrictions are to be resolved in favor of the free and unrestricted use of the land. *Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E.2d 174 (1981). Nevertheless, such covenants must be reasonably construed to give effect to the intention of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction. *Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967).

*Black Horse Run*, 88 N.C. App. at 85, 362 S.E.2d at 621. In *Tull v. Doctors Building, Inc.*, 255 N.C. 23, 39-40, 120 S.E.2d 817, 828 (1961), our Supreme Court discussed the termination of restrictions appearing in restrictive covenants:

The Court said in *Rombauer v. Compton Heights Christian Church*, 328 Mo. 1, 40 S.W.2d 545, 553: "No hard and fast rule can be laid down as to when changed conditions

have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement."

*See also* 14 Am. Jur., Covenants, Conditions and Restrictions, Sections 305, 306, 307; 26 C.J.S., Deeds, Section 171; Thompson on Real Property, Permanent Edition, Vol. 7, Section 3651.

On the subject of changed conditions as affecting the enforcement of restrictive covenants, the cases are legion. Many of them are discussed or cited in Notes in 54 A.L.R. 812, 85 A.L.R. 985, 103 A.L.R. 734, 4 A.L.R. 2d 1111. The cases, of course, deal with different facts, and it seems it is not possible to reconcile many of the holdings on substantially similar facts. A full discussion of the subject is likewise to be found in *Booker v. Old Dominion Land Co.*, 188 Va. 143, 49 S.E.2d 314, and in *Pitts v. Brown*, 215 S.C. 122, 54 S.E.2d 538.

The Court said in *Holling v. Margiotta*, 231 S.C. 676, 100 S.E.2d 397: "We find no error in the conclusion of the lower court that the defendants failed to make out their defenses of laches, estoppel and waiver on the part of the plaintiffs. The free parking on the unoccupied portion of Lot No. 2 by customers while shopping in the nearby stores is not an objectionable commercial use of the lot. Utilization of the first floor of the garage apartment as a storage place for the adjacent grocery was an insubstantial commercial use. These very limited uses for nonresidential purposes were not objected to by plaintiffs or the other residents of the subdivision but should not, in equity be held to have estopped them from asserting their right against the subsequent substantial violation by defendants."

. . . .

We are of the opinion, and so hold, that the unchallenged findings of fact do not show that the use of Lots 11, 12, 13, 15, 16, 17 and part of Lot 14 in Block P of this subdivision is such a radical or fundamental change or substantial subversion as practically to destroy the essential objects and purposes of the restriction agreement, as to warrant the removal of the residential restrictions, thereby destroying this residential subdivision with many fine, well kept homes. It would be inequitable to hold otherwise.

*Tull*, 255 N.C. at 39-40, 120 S.E.2d at 828. At this juncture, we note the following contention of defendants:

> Plaintiff has argued and the Court apparently ruled that the termination provision is not triggered until a "radical change" in the area has occurred. It is true that, in cases when the covenants themselves do not provide for their own termination, the court inquires whether the covenants have been rendered virtually meaningless and obsolete by reason of "radical change" in the use to which other nearby properties have been put.
>
> In this case, however, the covenants do provide for their own termination, and the "radical change" test is not appropriate. Hence, in order to overcome plaintiff's summary judgment motion, the defendants merely need to offer evidence tending to show that there has been some turn to commercial use of adjacent or nearby properties.
>
> . . . .
>
> The facts of the case at bar are entirely different from the authorities cited by the plaintiff [*Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 268 S.E.2d 494, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 442 (1980) (*citing Tull, supra*); *Williamson v. Pope*, 60 N.C. App. 539, 299 S.E.2d 661 (1983) (*citing Tull, supra*); *Black Horse Run v. Kaleel*, 88 N.C. App. 83, 362 S.E.2d 619 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988) (*citing Tull, supra*)]. This Court is not being called upon to terminate a restrictive covenant which on its face has a perpetual duration. Rather, this Court is being asked to construe restrictive covenants which do contain a termination provision. When construing this termination provision, this Court must do so strictly against the grantor and in favor of the unfettered use of land. The termination provision here does not require "radical change" in the area for it to be triggered. Therefore, this Court should not imply that such a requirement exists. This Court instead should construe the restriction to require merely a showing that one or more adjacent or nearby properties in the area have been "turned to commercial use."

(Emphasis in original.) We disagree. First and foremost, our Supreme Court has stated that "[i]n construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration

of *all* the covenants contained in the instrument or instruments creating the restrictions." *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967) (*citing Callaham v. Arenson*, 239 N.C. 619, 80 S.E.2d 619 (1954)) (emphasis in original). After an examination of the covenants at issue here, we find that no ambiguities exist and we accordingly apply to the covenants a "reasonable constru[ction] to give effect to the intention of the parties," *Black Horse Run*, 88 N.C. App. at 85, 362 S.E.2d at 621; *Long*, 271 N.C. 264, 156 S.E.2d 235, rather than the strict construction urged by defendants. *See also Barber*, 62 N.C. App. 455, 302 S.E.2d 915.

While we note defendants' statement regarding the factual distinction between this case and the three cases cited by plaintiffs, we further note that defendants' argument contains no authority of any type for the proposition that a standard other than the "radical change" standard is applicable here. *See* N.C.R. App. P. 28(b)(5) ("The body of the argument shall contain citations of the authorities upon which the appellant relies"). Nevertheless, our construction of the covenants is governed by Mrs. Gaskins' intent at the time the covenants were written. Accordingly, after careful scrutiny, we hold that the trial court properly concluded that Mrs. Gaskins intended that the termination provision only be triggered upon the substantial commercial use of multiple nearby or adjacent properties. We are not persuaded that any period of commercial use of a single property in the vicinity at any point in time, as argued by defendants, will trigger the termination provision. While the standard used by the trial court is not apparent from its order, we conclude that the trial court did not err in entering summary judgment for plaintiff. *Tripp v. Flaherty*, 27 N.C. App. 180, 182, 218 S.E.2d 709, 710 (1975) ("Validity of the judgment does not depend upon the form in which the determination is made, whether express or implied, but upon the correctness of the determination"). On the facts of this case, application of the "radical change" standard, as enunciated in *Tull*, 255 N.C. 23, 120 S.E.2d 817, *Hawthorne*, 300 N.C. 660, 268 S.E.2d 494, *Williamson*, 60 N.C. App. 539, 299 S.E.2d 661, and *Black Horse Run*, 88 N.C. App. 83, 362 S.E.2d 619, would not violate Mrs. Gaskins' intent in her creation of the restrictive covenants.

Defendants contend that they have set forth sufficient evidence of commercial use of the nearby properties, when viewed in the light most favorable to them, to permit the issue of the termination of the covenants to go to the jury. Defendants' evidence includes: (1) rental of nearby residential housing to vacationers and other

temporary guests, including the operation of what plaintiff herself described in a deposition as a "bed and breakfast"; (2) use of residences as rental properties with at least one transaction being handled by a rental agency; (3) prior use of nearby residences by an antique dealer and by the owner of a charter boat "during the 1960's and 1970's" who both allegedly made some transactions on their respective leased properties; (4) the leasing of a lot 15 feet away from the Gaskins lot to store machinery supplies and equipment in connection with a construction project; and (5) the use of the same lot "as a sales office for condominium units, some of which are not located on the Gaskins lot" [emphasis in original].

Here, defendants' evidence is largely composed of historical incidents occurring at different times. Even when viewed in the light most favorable to defendants as nonmovants, it does not compel a conclusion that plaintiff has waived her right to enforce the restrictions or that the restrictive covenants have otherwise terminated. This Court has stated:

An acquiescence in a violation of restrictive covenants does not amount to a waiver of the right to enforce the restrictions "unless changed conditions within the covenanted area are 'so radical as practically to destroy the essential objects and purposes' of the scheme of development." *Barber v. Dixon*, 62 N.C. App. 455, 459, 302 S.E.2d 915, 918, *disc. rev. denied*, 309 N.C. 191, 305 S.E.2d 732 (1983); *quoting Tull v. Doctors Building, Inc.*, 255 N.C. 23, 39, 120 S.E.2d 817, 828 (1961). *Accord Williamson v. Pope*, 60 N.C. App. 539, 299 S.E.2d 661 (1983) (plaintiffs' failure to enforce covenant against motel in residential area did not waive plaintiffs' right to enforce covenant against convenience store); *Mills v. Enterprises, Inc.*, 36 N.C. App. 410, 244 S.E.2d 469, *disc. rev. denied*, 295 N.C. 551, 248 S.E.2d 727 (1978) (use of residential lot for business parking was not significant enough to constitute waiver of right to enforce covenant prohibiting commercial use); *Van Poole v. Messer*, 25 N.C. App. 203, 212 S.E.2d 548 (1975) (plaintiffs' failure to enforce covenant against a house trailer on another lot 800 feet from defendants' trailer did not render covenant unenforceable); *Cotton Mills v. Vaughan*, 24 N.C. App. 696, 212 S.E.2d 199 (1975) (plaintiffs' failure to object to the use of four other residences for business purposes does not constitute waiver of protection of restrictive covenant).

*Black Horse Run*, 88 N.C. App. 83, 87-88, 362 S.E.2d 619, 622-23. *See Walton v. Carignan*, 103 N.C. App. 364, 407 S.E.2d 241, *disc. review denied*, 330 N.C. 123, 409 S.E.2d 611 (1991). *See also* 5 Richard R. Powell, *Powell on Real Property* 679[1], at 60-135 ("Acquiescence, however, in insubstantial violations does not preclude the plaintiff from subsequently enforcing the restrictions when violations result in genuine damage to the plaintiff's interests") (footnote omitted); James A. Webster, Jr., *Real Estate Law in North Carolina* § 389 (Hetrick rev. 1988 & Supp. 1993). Here, the intermittent occurrence of allegedly commercial activity shown by defendants' evidence does not constitute a waiver of plaintiff's right to enforce the restrictive covenants. *See Starkey v. Gardner*, 194 N.C. 74, 77, 138 S.E. 408, 409 (1927) ("Nor should a property owner be held to have waived his rights and to have abandoned the protection conferred upon him by such covenants by reason of disconnected and immaterial violations of the restrictions in the conveyances. This idea is expressed in *Ward v. Prospect Manor Corp.*, 188 Wis., 534, 206 N.W., 856: 'It is now generally recognized by the overwhelming weight of authority in this country that an individual lot owner is not under penalty of waiving his right to the enforcement of a restrictive covenant by his failure to take notice of such violations as do not affect him' "). Based on the language of the restrictive covenants, we conclude that the examples cited by defendants, *even* assuming *arguendo* in the light most favorable to defendants that they were violations, are not so drastic as to trigger the termination of the restrictions. *See Cotton Mills v. Vaughan*, 24 N.C. App. 696, 704, 212 S.E.2d 199, 205 (1975); *Tull*, 255 N.C. at 39-40, 120 S.E.2d at 828. After carefully scrutinizing the evidence forecast by defendants, we hold that defendants have failed to set forth sufficient evidence to raise a genuine issue of material fact as to the existence of any of the conditions upon which the restrictive covenants terminate. *Cf. Van Poole v. Messer*, 25 N.C. App. 203, 212 S.E.2d 548 (1975) (finding no error where trial court declined to submit an issue to the jury regarding whether restrictive covenant had become unenforceable). This assignment of error fails.

## III.

Defendants argue that "[t]he trial court erred in granting plaintiff's motion for summary judgment because there exists a genuine issue of material fact as to whether the plaintiff owns land that had been retained by Mrs. Gaskins when she imposed the restric-

tive covenants and that said land is benefitted by the covenants." We disagree. After careful review, we hold that the trial court properly entered summary judgment for plaintiff in that plaintiff has conclusively established that she is the owner of the property originally retained by Mrs. Gaskins, her predecessor in interest, and is accordingly entitled to enforce the terms of the restrictive covenants. *See Runyon*, 331 N.C. at 308, 416 S.E.2d at 188 ("Having reviewed the language of the deed creating the restrictive covenants, the nature of the covenants, and the evidence concerning the covenanting parties' situation and the circumstances surrounding their transaction, we conclude that plaintiff Williams presented ample evidence establishing that the parties intended that the restrictive covenants be enforceable by the owner of the property retained by Mrs. Gaskins and now owned by plaintiff Williams"). Defendants' arguments fail.

IV.

We find no genuine issue of material fact as to plaintiff's cause of action. Accordingly, we affirm the trial court's 4 December 1992 judgment and remand for further proceedings not inconsistent with this opinion.

Affirmed.

Judges JOHNSON and LEWIS concur.