ELMORE, Judge.
 

 *538
 

 *449
 
 Defendant Charity A. Sneed ("Mother") appeals from an order essentially granting Mother and plaintiff Jason M. Sneed ("Father") joint custody of their teenaged children pending commencement of a reunification program designed to repair the children's relationship with Father, which the trial court found had been damaged by Mother's alienating behaviors. The order provides that Father shall have primary physical custody of the children upon commencement of the program, while Mother's visitation with the children shall be temporarily suspended pending completion of the program. The order further provides that the children attend public or private school rather than be homeschooled by Mother.
 

 On appeal, Mother contends the trial court abused its discretion in denying her motion to exclude the expert testimony and report of the parties' consented to and court-appointed forensic custody evaluator; that it abused its discretion in suspending Mother's visitation with the children pending their completion of the reunification program with Father; and that nine of the court's findings of fact are unsupported by the evidence.
 

 For the reasons stated herein, we affirm.
 

 I. Background
 

 There were three children born of the parties' August 1996 marriage, to wit: a daughter, born March 1999, and two sons, born January 2001 and May 2003.
 

 Father initiated this action by filing a complaint for custody on 5 January 2015. That same day, Father hand-delivered Mother a copy of the complaint along with a letter from his attorney, which included the following relevant excerpts:
 

 [Father] is aware of your adulterous conduct. Having committed adultery and having been caught, it is appropriate that you vacate the marital residence. Please make arrangements to do so immediately, leaving the children in their home and in [Father]'s care. [Father] is willing to work with you to arrange a reasonable schedule of shared physical custody.
 

 Pending resolution of [Father]'s claim for child custody, demand is made that you not remove the children from the State of North Carolina.
 

 *450
 
 Mother's response to the complaint and letter was to immediately remove the children to South Carolina without Father's knowledge or permission, and to cut off the children's contact with Father. On 6 January 2015, Father filed an
 
 ex parte
 
 motion for emergency custody relief in which he alleged that Mother had an ongoing relationship with a man who lived in Sweden; that Mother had plans to travel internationally with the children despite Father's objection; and that Father was concerned Mother would leave the United States with the children and not return. The trial court granted Father temporary and exclusive custody of the children in an emergency order dated 7 January 2015.
 

 Upon Mother's return to North Carolina, and despite the terms of the January 2015 order, the parties agreed between themselves to a week-to-week rotating schedule of physical custody. However, on 19 August 2015, Father filed a motion for custody evaluation in which he alleged that Mother was not complying with the agreed-upon schedule; that Mother, who had homeschooled the children since birth, was alienating the children from Father; and that Father's relationship with the children was continuing to deteriorate.
 

 Following a 1 September 2015 hearing, the trial court entered a consent order appointing Dr. Karen Shelton as a forensic custody evaluator. The court tasked Dr. Shelton with considering the mental health of the parties, their strengths and weaknesses, the parent-child relationships, the parents' behaviors that may affect that relationship, the children's needs, and any treatment recommendations, and it requested that Dr. Shelton provide the court with her custody recommendations.
 

 The court also entered an updated "order on emergency child custody, temporary parenting arrangement" on 3 December 2015. The December 2015 order explained that the matter had been delayed from January to September 2015 and that an emergency no longer existed, and it provided that the parties
 
 *539
 
 share joint physical custody on a week-to-week rotating schedule "pending a hearing on permanent custody[.]" The order addressed such details as holiday visitation, exchange of the minor children, transportation to extracurricular activities, access to records, and communication between the parties.
 

 On 10 March 2016, Father filed motions for contempt and custody modification in which he alleged that Mother was still refusing to comply with the week-to-week rotating schedule. Father specifically alleged that he had not visited with the parties' daughter since 1 September 2015, and that Mother had "undertaken a course of conduct designed to alienate" their sons from Father. Father's motions were denied following
 
 *451
 
 a 24 May 2016 hearing in which the parenting coordinator, the parties' daughter, the children's therapists, and Mother all testified.
 

 A permanent custody hearing took place on 16 and 17 November as well as 5 and 6 December 2016. On the morning of 16 November 2016, Mother filed a motion
 
 in limine
 
 "to exclude the custody evaluation report of Dr. Karen Shelton and trial testimony of Dr. Karen Shelton."
 
 [1]
 
 The trial court denied Mother's motion and subsequently accepted Dr. Shelton "as an expert in the field of child custody evaluation and child psychology." Dr. Shelton's expert testimony included her opinion as to the matters she had been tasked by the court to consider, and her August 2016 custody evaluation report was admitted into evidence.
 

 In an order dated 12 January 2017, the trial court essentially granted the parties joint custody pending commencement of Family Bridges: A Workshop for Troubled and Alienated Parent-Child Relationships. The order specifically provides:
 

 1. Plaintiff/Father and the minor children shall participate in the Family Bridges program as soon as administratively possible and in all events, this program shall be completed prior to March 25, 2017 when [the parties' daughter] turns eighteen (18). Pending the commencement of the reunification program, the parties shall continue to operate under the physical custody schedule set forth in the December 3, 2015 custody order.
 

 2. As soon as administratively possible, Plaintiff/Father shall have primary physical custody of the minor children and [he] and the minor children shall attend the Family Bridges program.
 

 3. Beginning on the commencement date of the Family Bridges program, and pending the completion of the requirements as set forth herein, Defendant/Mother shall have no contact with the minor children[.]
 

 ....
 

 5. The parties are granted joint legal custody of the minor children.
 

 *452
 
 ....
 

 13. Beginning January 1, 2017, [the parties' sons] shall cease homeschooling and shall be enrolled in a public or private school. Plaintiff/Father shall discuss the school choice in good faith with Defendant/Mother, but shall have final-decision making authority if the parties cannot come to a mutual decision.
 

 14. This Order is subject to review pending the completion of the Family Bridges program and a period of consecutive no contact between Defendant/Mother and any of the minor children lasting for ninety (90) consecutive days. Should Defendant/Mother have contact with the children prior to the expiration of the no-contact period, the period of no contact shall begin again ... until ninety (90) consecutive days have passed without parent-child contact. At the conclusion of the no-contact period, this Court will determine the conditions, timing, and nature of resumption of contact between Defendant/Mother and the minor children with the assistance of and input from any aftercare professional(s).
 

 Mother entered notice of appeal from the order on 10 February 2017.
 

 *540
 

 II. Analysis
 

 Mother contends the trial court abused its discretion in denying her motion to exclude Dr. Shelton's expert testimony and report and in temporarily suspending Mother's visitation rights. She also argues that nine of the court's thirty-six findings of fact are unsupported by the evidence.
 

 A.
 
 The trial court did not abuse its discretion in denying Mother's motion to exclude Dr. Shelton's expert testimony and report
 
 .
 

 Mother first contends the trial court abused its discretion in denying her motion to exclude Dr. Shelton's expert testimony and report because neither the testimony nor report were relevant or reliable as required by Rule 702(a) of our Rules of Evidence.
 

 "When reviewing the ruling of a trial court concerning the admissibility of expert opinion testimony, the standard of review is whether the trial court committed an abuse of discretion."
 
 State v. Ward
 
 ,
 
 364 N.C. 133
 
 , 139,
 
 694 S.E.2d 738
 
 , 742 (2010) (citing
 
 Howerton v. Arai Helmet, Ltd.
 
 ,
 
 358 N.C. 440
 
 , 458,
 
 597 S.E.2d 674
 
 , 686 (2004) ). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason
 
 *453
 
 or is so arbitrary that it could not have been the result of a reasoned decision."
 

 Id.
 

 (citations, quotation marks, and brackets omitted).
 

 Rule 702(a) "has three main parts, and expert testimony must satisfy each to be admissible."
 
 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 889,
 
 787 S.E.2d 1
 
 , 8 (2016). "First, the area of proposed testimony must be based on scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. This is the relevance inquiry."
 

 Id.
 

 Second, the witness must be qualified as an expert by skill, knowledge, experience, training, or education.
 
 Id.
 
 at 889,
 
 787 S.E.2d at 9
 
 . And third,
 

 the testimony must meet the three-pronged reliability test that is new to the amended rule: (1) The testimony must be based upon sufficient facts or data. (2) The testimony must be the product of reliable principles and methods. (3) The witness must have applied the principles and methods reliably to the facts of the case.
 

 Id.
 
 at 890,
 
 787 S.E.2d at 9
 
 (citations, quotation marks, and brackets omitted).
 

 In the instant case, Mother specifically argues that Dr. Shelton's testimony and report were neither relevant nor reliable. As to relevancy, she contends Dr. Shelton's contributions did not provide insight beyond conclusions the trial court could readily draw from its ordinary experience. According to Mother, Dr. Shelton merely provided "a version of facts found ... after interviewing many of the same people, and reviewing much of the same records, that came before the trial court." Regarding reliability, Mother argues that Dr. Shelton's opinion was "short on methodology"; "contains no order of operations, step by step analysis, or information regarding the principles or methods relied upon to create it"; and "never states the actual technique used." The record reveals that Mother's argument is meritless.
 

 In this particular case, Dr. Shelton spent approximately one year conducting her custody evaluation, and she issued her forty-three page report on 15 August 2016. At trial, Dr. Shelton explained that a child custody evaluation is "a comprehensive evaluation that gathers information in order for the expert to form opinions related to the court's determination of child custody and parenting plans." She then proceeded to describe the general process of conducting such an evaluation as follows:
 

 After a court order is obtained, the [custody] evaluation includes multiple components. It includes a review
 
 *454
 
 of records. It includes interviews with the parents. It includes ... parent-child observations and interviews with the children. It ... often includes psychological testing of the parents. It includes obtaining collateral information [from] third parties that are familiar with the family, the children ... that may ... have observations or input about what's happening in this family dynamic.
 

 Dr. Shelton went on to testify to and elaborate on the conclusions and analysis contained in her report.
 

 *541
 
 Because Mother has failed to demonstrate how the trial court abused its discretion in admitting the expert testimony and report of Dr. Shelton-the consented-to and court-appointed forensic custody evaluator-this assignment of error is overruled.
 

 B.
 
 The trial court did not abuse its discretion in ordering a conditional, temporary suspension of Mother's visitation rights
 
 .
 

 Mother next contends the trial court abused its discretion in suspending her visitation rights without finding that visitation is not in the best interest of the minor children as required by
 
 N.C. Gen. Stat. § 50-13.5
 
 (i).
 

 The court has wide discretion to fashion an order which will best serve the interests of the child; thus, "[t]he decision of the trial court regarding custody will not be upset on appeal absent a clear showing of abuse of discretion, provided that the decision is based on proper findings of fact supported by competent evidence."
 
 Woncik v. Woncik
 
 ,
 
 82 N.C. App. 244
 
 , 247,
 
 346 S.E.2d 277
 
 , 279 (1986).
 

 "While a noncustodial parent has a right to reasonable visitation, that right is limited to avoid jeopardizing the child's welfare."
 
 Id.
 
 at 250,
 
 346 S.E.2d at 280-81
 
 . Pursuant to
 
 N.C. Gen. Stat. § 50-13.5
 
 (i), the trial court, "prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child
 
 or
 
 that such visitation rights are not in the best interest of the minor child."
 
 N.C. Gen. Stat. § 50-13.5
 
 (i) (2017) (emphasis added).
 

 In the instant case, the trial court "had ample evidence before him to justify a conclusion that [Mother] had purposefully engaged in a course of conduct designed to alienate the child[ren]'s affections for [their] father, and that these actions were detrimental to the child[ren]'s welfare."
 
 Woncik
 
 ,
 
 82 N.C. App. at 250
 
 ,
 
 346 S.E.2d at 281
 
 . Moreover, the court did not permanently deny Mother the right of reasonable visitation;
 

 *455
 
 rather, the court specifically found and concluded that "Defendant/Mother is a fit and proper person to exercise visitation with the minor children, however, it is in the minor children's best interests and welfare that Defendant/Mother's visitation with the minor children be suspended pending completion of the Family Bridges program[.]" The court's order thus complied with the requirements of
 
 N.C. Gen. Stat. § 50-13.5
 
 (i).
 

 Because the trial court did not abuse its discretion "in fashioning an order designed to prevent further harm to the child[ren] from this type of behavior," this assignment of error is overruled.
 
 Woncik
 
 ,
 
 82 N.C. App. at 250-51
 
 ,
 
 346 S.E.2d at 281
 
 .
 

 C.
 
 The trial court's findings of fact are supported by competent evidence
 
 .
 

 In her final argument on appeal, Mother challenges findings of fact nos. 23, 24, 25, 27, 28, 29, 31, 33, and 34 as unsupported by the evidence.
 

 According to Mother, the only evidence to support findings 23, 27, 28, 29, and 31 came from Dr. Shelton's testimony. These findings read as follows:
 

 23. During the trial of this matter, the Court heard from four neutral parties: Lucy Dunning and Maria Curran, the family's therapists; Kary Watson, the parenting coordinator; and Karen Shelton, the Court-appointed forensic evaluator. All four witnesses indicated, and the Court so finds, that since the date of the parties' separation Defendant/Mother has engaged in behaviors designed to alienate the minor children from Plaintiff/Father.
 

 27. In her report to this Court, Dr. Karen Shelton, the agreed-upon and Court-ordered custody evaluator, testified and the Court so finds that Defendant/Mother exaggerated her concerns and allegations about Plaintiff/Father. Dr. Shelton described, and this Court so finds, that Defendant/Mother acted as a "gatekeeper," or a parent who designates or controls access to the other parent. Dr. Shelton testified and the Court so finds that the "gatekeeping" she observed by Defendant/Mother was severe and unhealthy.
 

 28. Dr. Shelton further testified and this Court so finds that although the minor
 
 *542
 
 children's education has progressed satisfactorily under Defendant/Mother's homeschooling, Defendant/Mother has begun to use homeschooling as a
 
 *456
 
 weapon to diminish the relationship between the minor children and Plaintiff/Father.
 

 29. Dr. Shelton further recommended the intervention of the Family Bridges program to repair the damaged relationship between Plaintiff/Father and the minor children. The Court finds that this program would be in the best interests and welfare of the minor children.
 

 31. The minor children's behavior since separation reflects Defendant/Mother's efforts to alienate the relationship between the minor children and Plaintiff/Father. [The parties' daughter] has not spoken substantively with Plaintiff/Father in over one (1) year, and [the parties' sons'] behavior toward Plaintiff/Father is dictated completely by Defendant/Mother. Most recently, an application was submitted to Liberty Preparatory Academy in [the older son's] name. The application deceptively included what purported to be Plaintiff/Father's electronic signature, although Plaintiff/Father had never seen the application. Further, the application included an email address for [the older son] that listed [the older son's] last name as Johnston, Defendant/Mother's maiden name. Prior to the date of the parties' separation, Plaintiff/Father had a close and loving relationship with all of the minor children. Currently, as a result of Defendant/Mother's acts, those relationships are strained and damaged.
 

 Mother makes no further argument as to the lack of evidentiary support for these findings other than to insist that Dr. Shelton's testimony was inadmissible.
 

 Because Dr. Shelton's testimony was admissible as discussed above, we conclude that findings 23, 27, 28, 29, and 31 were supported by the evidence.
 

 Mother also challenges finding 24, the final sentence of finding 25, finding 33, and finding 34, which read as follows:
 

 24. The minor children ... attended counseling with Ms. Dunning in the Spring of 2016. On May 24, 2016, Ms. Dunning testified at a Motion for Contempt hearing in this matter. At that hearing, Ms. Dunning recommended: that Plaintiff/Father and Defendant/Mother attend counseling for co-parenting; that the minor children attend
 
 *457
 
 reunification therapy with Plaintiff/Father; and that Defendant/Mother receive individual counseling to alleviate her anxieties about the minor children establishing a relationship with Plaintiff/Father. The Court finds that these recommendations were reasonable and appropriate and in the best interests of the minor children. Ms. Dunning testified and the Court so finds that instead of following those recommendations, Defendant/Mother unilaterally chose to terminate the minor children's relationship with Ms. Dunning.
 

 25. Maria Curran supervised the children's therapy and conducted family therapy for the parties and the children. At the trial of this matter, Dr. Curran testified and the Court so finds that the minor children appeared unconcerned about the status of their relationship with Plaintiff/Father. Dr. Curran recommended the Family Bridges Program, which she testified has a 95% success rate.
 

 33. Defendant/Mother is a fit and proper person to have visitation with the minor children. However, pending the minor children's completion of reunification therapy with Plaintiff/Father, such visitation shall be suspended as set forth below.
 

 34. Since June of 2016, both [the parties' sons] have been more engaged in activities with Plaintiff/Father. [They] have been well-behaved, traveled to family events, and participated in family activities with Plaintiff/Father. However, this Court finds that they were "being deceptive" in their engagement with Plaintiff/Father.
 

 As to finding 24, Mother contends the finding "is unsupported by evidence because it asserts that [Mother] chose to do something 'instead of' following recommendations of which she was unaware." She argues that the evidence does not support a finding that Ms. Dunning made any recommendations at the May 2016 hearing, and that Mother was therefore unaware of the recommendations. However, the evidence shows that Mother and her attorney had been informed of Ms. Dunning's recommendations as of May 2016.
 

 *543
 
 Mother also challenges the final sentence of finding 25, stating that while "Dr. Curran testified she was 'familiar' with the [Family Bridges] program, she offered no recommendation."
 

 *458
 
 Similarly, Mother's entire argument as to finding 33 consists of three sentences in which she takes issue with the trial court's reference to "reunification therapy." Mother states that, "[a]s 'reunification therapy' is not defined, [she] assumes this means the Family Bridges program. Dr. Shelton recommended Family Bridges, and testified it was not a therapeutic program, but an educational program."
 

 As to finding 34, Mother contends there was "no evidence that [the parties' sons] were 'being deceptive' in their engagement with [Father]."
 

 We conclude that Mother's specific challenges to findings 24, 25, 33, and 34 are inconsequential and do not warrant further review.
 
 See, e.g.,
 

 Black Horse Run Prop. Owners Ass'n-Raleigh, Inc. v. Kaleel
 
 ,
 
 88 N.C. App. 83
 
 , 86,
 
 362 S.E.2d 619
 
 , 622 (1987) ("Where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions."). This assignment of error is overruled.
 

 III. Conclusion
 

 The trial court did not abuse its discretion in denying Mother's motion to exclude the expert testimony and report of the parties' consented-to and court-appointed forensic custody evaluator, nor in temporarily suspending Mother's visitation with the children pending their completion of the reunification program with Father. Moreover, the trial court's findings of fact are supported by the evidence. Accordingly, the order of the trial court is hereby:
 

 AFFIRMED.
 

 Judges HUNTER, JR. and ZACHARY concur.
 

 [1]
 

 Mother also filed motions to exclude the testimony "of the minor children's treating clinicians, counselors, therapists, and psychologists" and "of Kary Watson," the court-appointed parenting coordinator, but she did not appeal the denial of those motions.